RAILROAD *v.* WEBSTER.

(*Nashville.*   March 12, 1901.)

1. RAILROADS.  *Liability for killing stock on unfenced track defined.*

The liability of a railroad company for stock killed or injured by its moving trains is, under the statute, absolute where its track is not lawfully fenced.  (*Post, p. 587.*)

2. SAME.  *Contract for non-liability for killing stock does not run with land.*

A contract whereby an adjacent land owner agrees with a railroad company, in consideration of its furnishing a part of the materials, to erect and perpetually maintain a fence along his line, parallel with and fifty feet from its track, and to release the company from all liability for stock killed or injured by its running trains, is a mere personal obligation of the particular land owner, and does not run with the land so as to bind or affect any subsequent purchaser or owner thereof.  Such contract does not pass either such title or easement in the land as will support a covenant real.  (*Post, pp. 587–596.*)

Case cited : Sanders *v.* Martin, 2 Lea, 215.

3. DEED.  *Void for want of description.*

A deed is void for want of sufficient description whose only identification of the premises intended to be conveyed, is in these words, to wit : "The party of the first part is the owner of certain lands fronting 4,574 lineal feet on said second party's line of railroad, on mile 295 of Henderson Division."  (*Post, pp. 589–596.*)

Cases cited :  Dobson *v.* Litton, 5 Cold., 616 ; Johnson *v.* Kellogg, 7 Heis., 265 ; Dougherty *v.* Chesnutt, 86 Tenn., 1 ; Wood *v.* Zeigler, 99 Tenn., 515.

FROM   ROBERTSON.

Appeal in error from Circuit Court of Robertson County.  LYTTON TAYLOR, Sp. J.

H. T. TRUE and A. E. GARNER for Webster.

CHAS. N. BURCH, J. W. JUDD and LOUIS T. COBBS for Railroad.

McALISTER, J. This suit was commenced before a Justice of the Peace to recover damages for the wrongful killing of plaintiff's mule by the railroad company. The trial in the Circuit Court before Hon. Lytton Taylor, Special Judge, and a jury resulted in a verdict and judgment in favor of the plaintiff for the sum of one hundred dollars. The company appealed, and has assigned errors. On the trial below there was evidence tending to show that the defendant company had not kept its track fenced in the manner prescribed by law, and the animal having escaped from its owner's premises strayed upon the track and was killed by a passing train. Under the statute the failure of the company to keep its track fenced and in repair makes its liability absolute for the killing of stock. In this view it is not seriously denied that the proof makes out a case.

The real controversy, however, arises upon the action of the trial Judge in excluding two written instruments offered in evidence. The object of this evidence was to show that plaintiff's grantor had entered into a covenant, running with the land, with the defendant company by which the company was to be exempt from liability for

killing stock in consideration of furnishing material to keep up the fences. The first instrument was a deed dated October 8, 1894, from Dr. J. M. Harris to Chas. and Ben F. Webster, the present plaintiff, conveying in fee two tracts of land lying in the Twelfth Civil District of Robertson County. The second instrument was a contract entered into on January 9, 1892, between Dr. J. M. Harris and the defendant railroad company, which contract was duly acknowledged and recorded in the Register's office of Robertson County, viz.:

"This contract, entered into this ninth day of January, 1892, between Dr. J. M. Harris, of the county of Greene, State of Ohio, of the first part, and the Louisville & Nashville Railroad Company, of the second part, witnesseth: That whereas, the said Dr. J. M. Harris, the first party, is the owner of certain lands fronting 4,574 lineal feet, more or less, on said second party's line of railroad, on mile 295 of Henderson Division, and desires to build a fence along his line next to said railroad fifty feet from the center of track. Therefore, in consideration of the second party furnishing at the depot at Greenbrier, Tennessee, station, the wire and the staples sufficient to construct a fence of seven strands, the said first party hereby agrees, for himself, heirs, and vendees, that he and they will furnish the balance of the material, erect and perpetually

maintain such fence at his and their cost and expense, and hereby release the said second party from all claims for damages by reason of his or their stock or cattle, or any stock or cattle in their charge, straying upon said railroad, and there being killed or injured.

"It is further agreed that repairs to said fence shall be made on same basis, the railroad company furnishing the wire and staples, and the party of the first part furnishing the balance of the material and doing the work. Said immunity from claims or liability for damages for killing or injuring such stock or cattle shall be a perpetual charge upon said land, not only as against its present owners, but also as against all persons who may hereafter own said land.

"In testimony whereof, we have hereunto set our hands and seals, the day and year herein written.                    J. M. HARRIS,

"*Louisville & Nashville R. R. Co.*

"By J. G. METCALF, *Gen'l Mgr.*

"Witness:

"GEORGE COOPER,

"CHARLES S. JOHNSON."

In connection with the deed and contract the defendant company offered to prove that the Dr. J. M. Harris who executed the deed to the plaintiff was the same person who executed the contract; and the land described and conveyed in the deed is the same land mentioned in the

contract. The Court, on objection from plaintiff's counsel, excluded this evidence.

It is insisted on behalf of plaintiff that the action of the Court in excluding the contract between Dr. J. M. Harris and defendant company was correct upon two grounds: (1) That it contains no description of the land; (2) that it is merely a personal covenant between Dr. Harris and defendant company, and does not run with the land so as to bind the successors in title of Harris.

It is insisted on behalf of plaintiff that the description and location of the land is not sufficient to give actual or constructive notice of what particular land was referred to in the contract; that it does not recite in what State, county, or civil district the land is situated, and that an inspection of the record would not have put a purchaser upon inquiry. The only description given in the contract is that "the party of the first part is the owner of certain lands fronting 4,574 lineal feet on said second party's line of railroad, on mile 295 of Henderson Division."

It is insisted, however, that parol proof is admissible to show what particular land was intended, and in that view defendant company offered to prove that the land described and conveyed in the deed from Dr. J. M. Harris to the plaintiff is the same land mentioned in the contract. The Court, however, excluded this offer of evidence.

In *Dobson* v. *Litton,* 5 Cold., 616, the Court stated the rule on this subject as follows: "Where an instrument is so drawn that upon its face it refers necessarily to some existing tract of land, and its terms can be applied to that one tract only, parol evidence may be employed to show where the tract so mentioned is located. But where the description employed is one that must necessarily apply with equal exactness to any one of an independent number of tracts, parol evidence is not admissible to show that the parties intended to designate a particular tract by the description. The rule in that case was announced with reference to the following writing, viz.: 'I have this day sold to W. K. Dobson a certain tract of land containing nine acres and sixty-six poles, near the junction of Broad Street, Nashville, and the Hillsboro Turnpike, Davidson County, Tennessee, for the sum of four thousand dollars.'"

In *Johnson* v. *Kellogg,* 7 Heis., 265, it is said "if the contract be for the sale of a tract of land well known by some name given to it in the contract, in such case no doubt that would be a sufficient description, and, if necessary, parol proof might be heard to show where the property is. In such case," continues the Court, "it will be observed that the parol proof thus resorted to is not to introduce any additional evidence as to the terms or stipulations of the contract,

but simply to ascertain if there be lands or property known by the name or description given in the writing, and where that property is." 4 Bax., 548. These rules were applied by this Court in *Dougherty* v. *Chesnutt,* 2 Pickle, 1. The description of the land given in the lease was, viz.: "All the right to quarry marble on the farm of Henderson Fudge known as Rose Hill." The Court held that this farm was sufficiently well known by the name of "Rose Hill" to furnish an identification and description of the land in the writing to meet the requirements of the statute, and that evidence might be heard to show the location of the property. The Court, however, was careful to remark that the instrument showed on its face that Henderson Fudge, the lessor, and W. F. Wright, the lessee, both lived in Hawkins County, Tennessee, from which it may be reasonably inferred that the lands lay in that county. The contract in the case at bar cannot be assimilated to the case last cited. The residence of the vendor, Dr. J. M. Harris, is stated in the face of the contract to be in Greene County, State of Ohio, while the situs of the railroad company is not stated at all. The contract does state that the material for building the fence to be furnished by the railroad company shall be delivered at Greenbrier, Tenn., but there is no recitation or intimation in the contract that this farm is at or near Green-

brier, Tenn. The whole description is that the said Dr. J. M. Harris is the owner of land on mile 295 of Henderson Division. We find here no general description of a particular tract of land by which it is known and can be identified, but this description would equally apply to the land on both sides of the railroad. There is nothing on the face of this contract that would give notice, actual or constructive, of this incumbrance to a purchaser who was in good faith investigating the title.

The latest case on this subject is *Wood* v. *Zeigler*, 15 Pickle, 515. In that case it was held that a memorandum of a sale of land, which describes the land sold as the "Baldwin Place," without giving the name of the State or county where located, or the name of the owner, is void. So that in our opinion if this contract between Dr. Harris and defendant company be viewed as conveying an interest in land, it is void for insufficient description. But the important inquiry remains whether this instrument does in point of fact convey, or attempt to convey, any interest in land.

Touching the latter proposition Mr. Jones, in his work on Conveyancing, Vol. 1, Sec. 788, says: "Though a covenant be made by one for himself and his assigns, yet if it does not concern the land, his assignee is not bound by it. The covenant in such case is merely collateral."

22 P—38

At Section 703 the author says: "To create a covenant running with the land, it is essential that with the making of the covenant there be a transfer of title from one party to the other, unless there is the equivalent of a grant of an easement or servitude which may attach to the possession of the land and run with it regardless of any change of ownership. Where one party covenants with another in respect of land, and at the same time, with and as a part of the making of the covenant, neither parts with nor receives any title or interest in the land, nor creates an easement, nor a right in the nature of an easement, for the benefit of the land, such a covenant is at best but a mere personal contract." See Jones on Easements, Sec. 670.

It is conceded by counsel for the company that in order to create a covenant running with the land so as to bind successors in title, two things must concur, namely: First, the covenant to be done or performed must touch and concern the land, and not a thing collateral to the land conveyed. Second, there must be between the original covenantor and covenantee the conveyance of an estate to which the covenant is pertinent, or the creation of an easement equivalent to an estate. It is not insisted by counsel that there was any transfer of title in this case from one party to the other, but the insistence is that there was the

creation of an easement which was equivalent to an estate. This contention presents the crucial question in the case.

It is contended that this contract between Dr. J. M. Harris and the defendant company creates both an easement in his land in favor of the defendant company and a servitude which attaches to the possession of it. The argument is that since the fence must rest equally on the land of both Harris and defendant company, this fact gives the company an easement in the land of Harris.

It was held in *Sanders* v. *Martin,* 2 Lea, 215, that "if two adjoining owners build a wall partly on each lot, and by agreement or continuous user for twenty years treat it as a party wall, each has an easement of support for his half."

The position of counsel is that we have here an agreement between Dr. Harris and the railroad company, two adjacent landowners, to build and perpetually maintain a fence on their adjoining lands. Now, in answer to this contention, it is only necessary to refer to the contract, and we find it recited that Dr. Harris desires to build a fence along his (Harris') line, next to said railroad, fifty feet from the center of the track. It does not appear that any part of this fence was to lie on defendant's land, but it was to be built on Harris' line. Hence defendant company thereby acquired no interest or easement in plaintiff's land. In order to create a cove-

nant running with the land, some interest in the land must pass from the grantor or be created by the covenant.

"If the covenant is not of a nature that the law permits to be attached to the estate as a covenant running with the land, it cannot be made such by agreement of the parties. Where the agreement is nothing more than a simple contract, which in law has no greater force than a license, there is no privity of contract or estate which will authorize a recovery upon it in an action at law. The contract is, in such case, personal or not assignable at law, and the right to enforce it and the liability upon it rests with the parties alone." Jones on Easements, Secs. 670-674. "If one taking such covenant neither parts with nor receives any interest in the land as a part of the covenant, this is at best merely personal, and does not bind the grantee." Jones on Easements, Sec. 676.

Whether Dr. Harris, the original owner, might not have been bound by this contract by way of an estoppel, we need express no opinion. The question presented upon this record is whether a purchaser of the land is bound by said contract, and we hold he is not so bound, for the reason that the exemption from liability was merely a personal contract between the original parties, and not a covenant running with the land. The result is the judgment of the Circuit Court is affirmed.