IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1887.

DOUGHERTY *v.* CHESNUTT.

(*Knoxville.* September 27th, 1887.)

I. LEASE. *Description of leased premises.* "*Rose Hill*" *farm.*

A written lease of realty which describes the leased premises as "all the right to quarry marble on the farm of Henderson Fudge, known as Rose Hill," but not showing the State, county, or civil district in which the farm is situated, is nevertheless valid between the parties, and, after registration, as against subsequent purchasers from the lessor, if on the face of the lease it is shown that both parties thereto reside in the same county, and it is proved that a farm lying in that county had been owned by the lessor named, and was known generally, though not universally, as "Rose Hill."

2

**2.** SAME. *Same. Parol evidence admitted to identify the lands.*

Parol evidence is admissible to *apply* (not to *supply*) a description of lands in a lease or deed; *e. g.*, it is competent in this case to show by parol that there was a "farm of Henderson Fudge" which was generally "known as Rose Hill," and to point it out.

Cases cited and approved: Johnson *v.* Kellogg, 7 Heis., 262; Snodgrass *v.* Ward, 3 Hay, 40; Dobson *v.* Litton, 5 Cold., 619.

Cited and distinguished: Shied *v.* Stamps, 2 Sneed, 172.

**3.** MEASURE OF DAMAGES. *For trespass to marble quarry under an honest but mistaken claim of title.*

Where a trespasser, under an honest but mistaken claim of title, has invaded a marble quarry and removed and sold stone, the measure of damages to which the true owner of the quarry is entitled against such trespasser is the value of the marble taken and sold, as it lay at the quarry cut, dressed, and prepared for market, less the *actual*—in no event to exceed the *usual* and *reasonable*—expense of thus cutting, dressing, and preparing it for market.

Cases cited: Ensley *v.* Nashville, 2 Bax., 144; Coal Creek Co. *v.* Moses, 15 Lea, 300; Ross *v.* Scott, 15 Lea, 479.

---

FROM HAWKINS.

---

Appeal from Chancery Court of Hawkins County. JOHN P. SMITH, Ch.

J. T. & J. K. SHIELDS and W. S. DICKSON for Complainants.

McDERMOTT & KYLE for Defendants.

FOLKES, J. It appears from the pleadings and proof, in this cause, that on 15th of April, 1868,

one Henderson Fudge leased to one Wright, for a period of twenty years, "all the right to quarry marble on his farm, known as Rose Hill," in consideration of which Wright was to pay the sum of $20 annually, and the further sum of five cents per cubic foot for all marble quarried, binding himself to take out not less than three hundred feet each year. On 22d of April, 1869, the said lessee, Wright, sub-let to complainant, Dougherty, the rights he had acquired under his lease, both of which instruments were duly registered. On 12th of September, 1882, Fudge sold and conveyed to defendants, by proper calls, the lands upon which it is claimed ·complainant held the lease as to the right to quarry. The consideration paid and recited in the deed is $4,500. This deed, after the usual covenants of seizin, right to convey, and freedom from incumbrance, concludes as follows: "I do further covenant and bind myself, my heirs and representatives, to warrant and forever defend the title to said land, and every part thereof, — except as to a lease upon the marble-rock, made to W. F. Wright some time since, — to the said H. K. Chesnutt, S. S. Chesnutt, and James M. Morrisett, their heirs and assigns, against the lawful claims of all persons whatever."

The defendants went into the possession of the lands, the same being valuable as a farm, and shortly thereafter began to quarry marble thereon, and continued to do so, without any molestation, until the bill in this cause was filed, on 18th of

October, 1884, wherein the facts above stated were set out. The bill charges that complainant owns and operates a quarry upon lands adjoining the Fudge · lands, and that it was of great interest, advantage, and pecuniary importance to him to own and control the right to quarry marble on the Rose Hill Farm; that so long as Fudge was the owner of said farm complainant regularly paid to him the annual rent stipulated in the lease, and by agreement with Fudge, instead of quarrying annually three hundred feet of marble, paid to him the sum of five cents per foot on the three hundred feet that should have been quarried, in addition to the annual rent; and that since the purchase of the fee by the defendants, he has always been ready and willing to pay the rent to them, together with compensation for the three hundred feet, if not quarried, or to open the quarry and get out the three hundred feet annually, as required by the terms of the lease. It is charged that each act of quarrying, and taking out of each stone, by defendants, is a violation of complainant's rights, and in order to prevent a multiplicity of suits, and fully obtain redress, an injunction was sought and obtained, restraining the defendants from further removing stone, or working the quarry, and for a decree against defendants for such damages as complainant may have sustained by reason of the premises; to this end an account is asked, and a prayer for general relief.

Preliminary injunction was granted.

Dougherty *v.* Chesnutt.

Defendants answer, admitting the purchase of the three-hundred-acre tract of land from Fudge, described in their deed. They deny that the same was known by the name of the "Rose Hill Farm, or that it was ever generally known by such name." They admit that they are, and have been, getting out and shipping marble. They deny that the paper writings set out in the bill are valid or binding at law or in equity as a lease of any land, or any interest therein, for want of description of the land; that the same are therefore void under the statute of frauds.

On motion, the preliminary injunction was dissolved, upon defendants executing bond to properly account to complainant for such damages as he may sustain by the dissolution of the injunction.

Upon the hearing, the Chancellor adjudged the complainant entitled to the relief sought, and made the injunction perpetual; and after decreeing that complainant was entitled by way of damages to recover of defendants the value of the marble-rock taken and removed by defendants from said farm during the term of complainant's lease before and during the litigation, referred the cause to the Master to take proof and report the value of the rock so taken and removed, directing that the Master in said account " *charge the defendants with the value of said marble-rock after being quarried, and in the condition in which it was removed from said farm.*"

Before the taking of said account, an appeal was granted under the statute.

The defendants assignments of error are:

*First*—That the lease of the right to quarry marble is void, under the statute of frauds, for want of sufficient description of the land. It is insisted that there is a total want of identification of the land, in that there is no State, no County, no Civil District, and no designation in the writing that will identify it; that such writing must contain in *itself*, or in some other paper to which it refers, a description of the property by which it can be identified, without the aid of parol proof.

We think this assignment not well taken. The language of the instrument is: "All the right to quarry marble on the farm of Henderson Fudge, known as Rose Hill."

The instrument shows on its face that Henderson Fudge, the lessor, and W. F. Wright, the lessee, both lived in Hawkins County, Tennessee, from which it may be reasonably inferred that the lands lay in that county.

There is much proof taken on the question as to whether this farm was known as "Rose Hill," the complainant's effort being to show that it was notoriously and generally known by that name, the defendants to show that it was not at all so known. As is generally the result in such cases, both fail to establish their extreme positions. The proof, when properly examined, establishes the fact that, while the place was not known universally by the

name of "Rose Hill," there being many old citizens who knew it merely as the Fudge place, yet it was so known and designated by very many people who were acquainted with the place, and who were in the habit of visiting the family of Mr. Fudge; that the name was given to it by the younger members of Mr. Fudge's family, and was recognized and generally so called by those who were on familiar terms with the family—indeed, by all the young people in the neighborhood.

It was, in our opinion, sufficiently well known by the name of "Rose Hill Farm" to furnish an identification and description of the land in the writing, to meet the requirements of the statute, and that evidence might be heard to show where the property is. It falls within the principle announced by Judge McFarland, in *Johnson* v. *Kellogg*, 7 Heis., 262: "In such case the parol proof thus resorted to, is not to introduce any additional evidence as to the terms of the contract, but simply to ascertain if there be lands or property known by the name or description given in the writing, and where that property is."

This distinction is well recognized in the books. *Snodgrass* v. *Ward*, 3 Hay., 40; 9 Hum., 289; 1 Greenleaf Ev., § 287.

It is true that in *Johnson* v. *Kellogg* the agreement was held insufficient, under the statute of frauds, but not upon the ground that the Court would not hear evidence to locate the "Bradley Sand Bank," but because there was no certainty

expressed as to the terms of the contract, or the amount of the interest in the property intended to be sold. In the case at bar, as we have seen, everything of this character is clearly and explicitly stated.

In *Dobson* v. *Litton*, 5 Cold., 619, this Court said: "If the agreement itself shows that some particular tract was *intended*, then parol proof is admissible to show the location and boundaries of the tract mentioned, and to enable the Court to find it."

The case of *Sheid* v. *Stamps*, 2 Sneed, 172, relied on by defendants, is not authority for their contention here. There the receipt executed was held an insufficient memorandum of sale; it did not show fact of a sale; it did not show the parties to the sale, if made, nor what interest in the property was intended to be sold, whether one-third, one-fourth, or one-tenth.

The distinction between the cases is manifest.

We lay no stress upon the saving clause in the warranty in the deed from Fudge to these defendants, as aiding the description in the lease, if the same were defective, nor as a recognition by them of complainant's title, that can be operative as an estoppel or otherwise.

At best, it is only notice of the fact that a lease had been made, and of this they would be charged with notice by the registration of the lease.

There is nothing in the language of the deed, nor the fact of the reservation, admitting the *va-*

Dougherty *v.* Chesnutt.

*lidity* of the lease, but only that Fudge would not warrant against it, and that the defendants were content to pay $4,500 for the farm with the restricted warranty, while they were willing to pay $5,000 for a complete warranty.

The second assignment of error is as to the proper measure of damages, it being insisted that in holding that complainant is entitled to recover the value of the marble-rock taken by defendants in the condition in which it was *after* being quarried, cut, dressed, and squared, and removed from the land. It is argued that the true rule for the measurement of damages in equity is that of *just compensation*, and that under this rule the defendants should be chargeable only with the value of the rock *in situ*, before being quarried or removed from its bed.

There are two rules of compensation of damages in these cases of mining trespass recognized by the Courts, sometimes designated as the mild and the harsh rule.

The mild rule is applied where the wrong was innocently done, by mistake or inadvertence; the harsh where the facts show the trespass to have been malicious, or with full knowledge of the title of the injured party, and in willful disregard of his rights.

The former rule charges the defendant with the value of the coal, ore, or rock mined *in situ*, usually measured by the royalty charged in the particular locality. The latter charges him with the

value of the same after severance, without compensation for mining and preparing for market.

The same rules are applied by the modern decisions in cases of mines, etc., where, as incident to the relief sought by a bill in equity, an account is asked, as obtains in an action at law for the same character of trespass. See *Root* v. *Railway Co.*, 105 U. S., where Mr. Justice Matthews discusses this question at length.

We think that under the facts of the case at bar, neither the mild nor the harsh rule should be applied, but that the rule which recognizes a modification of the two extremes furnishes the true measure of damages. To allow the mild rule, as insisted on by the defendants,—that is, the value of the rock in its bed, to be ascertained by the royalty charged in that locality,—would manifestly not reach the justice of the case. It would lead to this anomaly: the royalty that would be awarded complainant would be five cents per cubic foot for the stone quarried, together with the $20 per annum; and to become entitled to this the complainant, under the terms of the lease, would have to pay the defendants, as the holders of the legal title to the soil under their deed from Fudge, the same sum of five cents per cubic foot, and $20 rent, thus offsetting the damages with the rent reserved, and virtually allowing the owner of the soil to vacate and annul a lease of a mining or quarry right at pleasure, and take to himself all the *profits* of operating the mine or the quarry upon surrendering

nothing but the rent or royalty reserved in the lease. This would be virtually to place a premium upon the breach of contract, and would tend to invite trespass.

On the other hand, to apply the harsh rule in the case at bar, would be to place a punishment upon the defendants not warranted, except in cases where the trespass has been without the slightest color of title, and in willful disregard of the rights of others, which we are not authorized to say is the case here.

While we hold that the complainant has title to the right to quarry rock on the land in question, yet we are not prepared to say that the defendants have acted in willful disregard of this right; we cannot say that they have not acted under an honest, though erroneous, opinion as to the title to the rock.

Of course, ignorance of law as to the legal efficacy of complainant's lease, would in no manner discharge defendants from legal liability for damages growing out of their trespass, but after their liability is adjudged and fixed, the fact of an honest mistake as to title can and should be looked to by a court of equity in fixing the measure of damages.

As was said by this Court in *Ross* v. *Scott*, "the question is not one of negligence or oversight, but of good faith."

The weight of authority, both English and American, now is, that where there is an honest dis-

pute as to title, the harsh rule contended for is not applied.

In view of the many decisions of the courts under the statute of frauds, holding somewhat similar descriptions of the property void, who can say that there was no room for an "honest dispute as to title," in the case at bar.

The rule of equity in such case is that which furnishes just compensation to the injured party.

Applying this rule would be to award the complainant the value of the marble on the farm as quarried, cut and dressed, ready for market, less the actual, but in no case to exceed the usual and reasonable, cost of quarrying, cutting, and dressing.

This prevents the defendants (who stand in this record in the position of lessors to the complainant) from taking profit or benefit by their action in the premises, and at the same time gives, as near as may be, the complainant the full benefit of his "right to quarry marble on the Rose Hill Farm," which is the only right that has been invaded by the defendants.

It would not profit us to review in this opinion, already longer than was intended, the many cases to which our attention has been called. To do so would be to present a conflict of authorities greater than that which marked the controversy between Mr. Sedgwick and Professor Greenleaf as to exemplary damages, without a corresponding benefit.

We content ourselves therefore with a reference to *Ensley* v. *Nashville*, 2 Bax., 144; *Coal Creek M.*

*& M. Co.* v. *Moses*, and *Ross* v. *Scott & Russell*, 15 Lea, 300, 479, in the last of which cases will be found ample reference to the text books and reported cases, as gathered by the learning of the distinguished Judge who wrote the opinion of this Court in that case.

The decree of the Chancellor will be reversed and cause remanded, with direction that in the account to be taken the defendants be charged with the value of the marble as quarried, cut, dressed, and ready for market, less the actual, but not to exceed the usual and reasonable, cost of quarrying, cutting, and dressing.

The complainant will pay the cost of this Court; the costs in the Court below to be taxed as the Chancellor may direct.