### IN THE

# SUPREME COURT OF TENNESSEE

#### FOR THE

## EASTERN DIVISION.

---

## NASHVILLE. DECEMBER TERM, 1921.

---

WARD R. CASE *et al. v.* BRIER HILL COLLIERIES *et al.*

ERMINE G. PILE *et al v.* TRAVIS SMITH *et al.*

(*Nashville.* December Term, 1921.)

1. **FRAUDS, STATUTE OF.** Requisites of valid description of land stated.

Under Thompson's-Shannon's Code, section 3142, a description of land is good if on its face it appears to refer to some definite tract, and if, by the aid of parol proof, it can with reasonable certainty be applied to designate such tract; but the descriptive terms employed, together with the parol proof, must be such as to point out and comprehend some especial parcel, to the exclusion of any other parcel of land; and if the description, on its face, is so indefinite as to be applicable to any tract of land, parol evidence is not admissible at all, because its effect then would be to supply by parol a material part of the agreement which the statute requires to be in writing. (*Post, pp.* 11-12.)

(1)

Case v. Brier Hill Collieries.

Acts cited and construed: Acts 1801, ch. 25.

Cases cited and approved: Dougherty v. Chesnutt, 86 Tenn., 1; Dobson v. Litton, 45 Tenn., 616; Dry Goods Co. v. Hill, 135 Tenn., 60; Railroad v. Webster, 106 Tenn., 586.

Cases cited and distinguished: Sheid v. Stamps, 34 Tenn., 172; Farris v. Caperton, 38 Tenn., 606; Johnson v. Kellogg, 54 Tenn., 262.

Code cited and construed: Sec. 3142 (T.-S.).

2. **FRAUDS, STATUTE OF.** *Description shown, by extrinsic proof to apply to more than one tract is void.*

Under Thompson's-Shannon's Code, section 3142, though a description may not be void on its face, as where a local appellation is used, if the extrinsic proof develops it .o be alike applicable to two or more tracts, and does not fasten it to one, then the description fails. (*Post, p.* 12.)

Case cited and approved: White's Lessee v. Hembree, 1 Tenn., 530.

3. **DEEDS.** *Description not identified as applicable to only one tract not good.*

A description of land as the "J. S. tract," which the evidence showed was applied sometimes to a large tract of land and sometimes to a smaller tract therein, where "J. S." had his home, *held* invalid. (*Post, pp.* 12-18.)

Cases cited and approved: Wood v. Zeigler, 99 Tenn., 515; Todd v. Cannon, 27 Tenn., 512; Winchester v. Winchester, 38 Tenn., 488.

---

FROM FENTRESS.

---

Appeal from the Chancery Court of Fentress County.— HON. W. R. OFFICER, Chancellor.

WARD R. CASE, JOHN F. McNUTT, CONATSER & WRIGHT and A. H. ROBERTS, for appellants.

JAS. A. FOWLER, L. T. SMITH, J. T. WHEELER, WM. WAD-
DLE, E. G. FOSTER, J. W. EVANS, JOHN M. DAVIS and E. E.
BARTHELL, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

The main action is ejectment by the heirs of S. H. Pile
and the trustee of a mortgage which they made to recover
from the Brier Hill Collieries, Stearns Coal & Lumber
Company, and others, a tract of land in Fentress county
said to contain fifteen thousand acres. There was a de-
cree for the defendants below, from which the com-
plainants have appealed.

The basis of complainants' title as conceded in their
brief is a compromise agreement between S. H. Pile and
the devisees of A. L. Crawford, and deeds executed in
pursuance of this agreement in 1895 and 1896.

There is a large boundary of land in Fentress, Pickett,
and Scott counties, embracing one hundred twenty-three
thousand nine hundred and eighty-nine acres known as
the "Big Survey" and lying between the present Ten-
nessee and Kentucky line, known as Walkers line, and
the old Tennessee and Kentucky line known as Matthews
line, or the Latitude line. This grant was made by the
State of Kentucky to F. P. Stone and others.

At the time of the agreement just above referred to
S. H. Pile was claiming a portion of this grant, and there
was pending in the federal court at Knoxville a suit in
which A. L. Crawford sought to recover the whole of
the "Big Survey."

A. L. Crawford died testate, and one A. B. Bradford
was appointed the agent of Crawford's devisees in this

action. Bradford and Pile undertook to settle their differences, and as evidence of this settlement the following instruments were executed:

"Jamestown, Tenn., July 12, 1895.

"This indenture witnesseth, that S. H. Pile, of Fentress county, Tennessee, for himself and A. B. Bradford, of county and State aforesaid, as agent for the heirs of A. L. Crawford, deceased, make the following agreement:

"Whereas, a suit is now pending in the federal court at Knoxville, Tenn., styled *A. L. Crawford* v. *Anderson Smith et al.,* wherein said Pile is a defendant and wherein said Crawford seeks to recover a tract of land within the bounds of the 'Big Survey' known as the Washington Young tract, and whereas, the heirs of the said Crawford and the said Pile wish to settle the lawsuit without further trouble: Therefore, the aforesaid Pile and Bradford make the following agreement:

"Said Pile will quitclaims to said Crawford heirs all of his right, title and interest in and to all of the land lying within the boundaries of the 'Big Survey,' excluding his home tract, the Washington Young tract, the Anderson Smith tract, the Jim Smith tract, the Elijah Smith tract, and the Alvin Huff tract, also excluding leases owned by said Pile up to date for oil, gas, and other mineral on the following tracts:

"Jerry Delk and wife, James Delk and wife, William West and wife, Nancy Stewart and heirs, and Phillip Williams; also all leases on land in Scott county held by parties under compromise decree from the federal court in the case of *A. L. Crawford* v. *Anderson Smith et al.;* also excluding the Flat Rock tract bought by said Pile from Hiram Crabtree.

"Said Bradford for said Crawford heirs agrees that said heirs will convey by quitclaim to said Pile all of their right, title, and interest in and to the Washington Young tract, the Jim Smith tract, the Anderson Smith tract, the Elijah Smith tract, and said Pile's home tract and that they will dismiss the suit now pending against said Pile in the federal court at Knoxville, to-wit, *A. L. Crawford* v. *Anderson Smith et al.*, said Pile to pay all the costs incurred by any of the other defendants in said suit, or the plaintiff.

"In testimony whereof, the parties hereto have set their hands this the 12th day of July, 1895."

"For one dollar in hand paid and other valuable considerations, not necessary to mention, I, S. H. Pile, of Fentress county, Tennessee, have this day bargained and sold and do hereby transfer and convey unto A. J. Crawford, of Terre Haute, Indiana, and J. P. Crawford, also of Terre Haute, H. A. Crawford, of St. Louis, Mo., John L. Crawford and L. S. Hoyte, of New Castle, Pennsylvania, all my right, title, and interest in and to the following tract of land, to wit:

"Lying and being in Pickett, Fentress and Scott counties, in the State of Tennessee, and described as follows:

"Known and described as land office warrant No. 630, granted by the State of Kentucky to F. P. Stone and others, and known as the 'Big Survey,' originally containing one hundred twenty-three thousand nine hundred and eighty-nine acres, reference is here made to the said land office warrant No. 630 for a more specific description of the lands herein conveyed; excluding, however,

from this conveyance the following described tracts of land, to-wit:

"First tract: Being part of said Big Survey, and lying in Fentress and Pickett counties, Tennessee, beginning at the Chimney rock on the State line between Kentucky and Tennessee; running thence to the dividing ridge between the Little South fork and Wolf river; with the dividing ridge to the Dave Rock house at the head of Wolf river; thence to the head of Dosses creek, and with said creek to Dosses mill, and with the road to the State line near Reubin Hamby's; thence with the State line to the beginning.

"Second tract: On Wolf river in Fentress county, and known as my home place, fully described in a deed from John C. Wright and Mary Wright, his wife, to S. H. Pile, dated Feb., 1876, and recorded in Book M, pages 561-563, Records Fentress Co., which is referred to for description.

"Third tract: In Scott county, and known as the Anderson Smith tract.

"Fourth tract: Known as the Jim Smith tract.

"Fifth tract: Known as the Elijah Smith·tract in Scott Co.

"Sixth tract: Known as the A. C. Huff tract in Pickett Co., and fully described in a deed from Mathis Wright, trustee, to A. C. Huff, recorded in Book O, pages 292-294, Fentress Co.

"Seventh tract: Known as the Flat Rock tract, 172 Fentress Co.

"Also excluding from this conveyance, lease for oil, gas, and other minerals on the following tracts: Jerry

Delk and wife, Jas. Delk and wife, Nancy Stewart and heirs, and Phillip Williams. Also all oil leases on lands in Scott county held by parties under compromise in case of *A. L. Crawford* v. *Anderson Smith et al.*

"In testimony whereof, I have hereunto set my hand, this 24th day of January, 1896."

"For one dollar in hand paid, and other considerations not necessary to mention, we, A. J. Crawford and J. P. Crawford, of Terre Haute, Indiana, H. A. Crawford, of St. Louis, Mo., John L. Crawford and L. S. Hoyte, of New Castle, Pennsylvania, heirs and legatees of A. L. Crawford, do hereby transfer and convey unto S. H. Pile of Fentress county, Tennessee, all our right, title, and interest in and to the following tracts of land in Fentress, Pickett, and Scott counties, in the State of Tennessee, and described as follows:

"First tract: In Fentress and Pickett counties, Tennessee, and beginning at the Chimney rock on the State line, between Kentucky and Tennessee; running thence to the dividing ridge between the Little South fork and Wolf river, and with the dividing ridge to the Dave Rock house at the head of Wolf river; thence to the head of Dosses creek and with said creek to Dosses mill, and with the road to the State line, near Rubin Hamby's; thence with the State line to the beginning, known as Washington Young tract.

"Second tract: On Wolf river in Fentress County and known as the S. H. Pile home place.

"Third tract: In Scott county and known as the Anderson Smith tract.

"Fourth tract: In Scott county and known as the Elijah Smith tract.

"Fifth tract: In Scott county, known as the Jim Smith tract.

"To have and to hold forever.

"In testimony whereof we have hereunto set our hands this the 17th day of March, 1896."

The land here sued for is said by the complainants to be the "Jim Smith tract" referred to in these papers.

A jury was demanded in the case, many defenses were interposed, and a number of issues framed and a vast amount of proof was taken. At the conclusion of the evidence the defendants moved the chancellor for a decree in their favor without submitting any issues of fact to the jury. This motion was based upon several grounds, and was sustained by the chancellor. The decree does not show upon which ground the chancellor acted, but it is said in argument that he was of the opinion the description of the land sued for as the "Jim Smith tract," even when aided by parol proof, was ineffectual. If this was the ground of his honor's decree, we think it was well chosen.

It will be noticed that in the deed from the Crawfords to Pile the land was referred to as, "In Scott county, known as the Jim Smith tract." In the compromise agreement and in the exception or reservation in Pile's deed to the Crawfords it is referred to as the "Jim Smith tract."

It is earnestly insisted that the chancellor erred in not submitting to the jury the question of the identification of the land as it was sought to be aided by the

extrinsic proof.  It is urged that he should have allowed the jury to say whether or not the ''Jim Smith tract'' was the tract here in litigation.

This contention necessitates a close examination of the evidence on our part.  Before considering the proof, however, we think it well to state our views of the law involved, and to lay down the rules we deem controlling of this controversy.

Our statute of frauds is contained in chapter 25 of the Acts of 1801.  Section 1 of that act, carried into Thompson's Shannon's Code at section 3142, is partly as follows:

''No action shall be brought . . . upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year, . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.''

Speaking of the requirements of the writing necessary to a valid sale of land under the statute, this court has said:

''No particular form of words or any artificial arrangement of them is required, but the fact of a sale and its terms, embracing a designation of the parties to it, and the land sold, must appear with reasonable certainty in the writing relied upon, or some other to which it refers.''  *Shoid* v. *Stamps,* 34 Tenn. (2 Sneed), 172.

It has been held in several of our cases that a reference to land in a deed by a local appellation which ex-

trinsic proof can apply to a particular tract is a good description within the statute of frauds.

In *Farris* v. *Caperton*, 38 Tenn. (1 Head), 606, documents were executed in which partnership lands were set apart to the partners individually upon dissolution, the lands being described by local names. This was upheld, and the court said:

"Here the lands belonged to the parties as a firm, and were well described in the deeds, and nothing more was required in a division between themselves, but to designate the tracts assigned to each, by such terms as would be well understood, or the general appellations by which they were known. The 'Peter tract,' the 'Riley tract,' and the 'Mill tract' were sufficient. If any uncertainty or ambiguity existed, it could be easily explained by parol." *Farris* v. *Caperton*, supra.

It is to be noted in this case that the several tracts set apart by name were said to have been well described in the previous deeds—a condition not existing here as to the "Jim Smith tract."

In *Johnson* v. *Kellogg*, 54 Tenn. (Heisk.); 262, the principle of the foregoing case was recognized, but not applied. The land was described as the Bradley sand bank, and the court said:

"Undoubtedly, parol evidence must be resorted to, to ascertain where the land is that fills the description contained in the deed. If the contract be for the manor of S., the proof must show which is the manor of S., particularly if there be two manors of S. If the contract be for the sale of a tract of land or other real estate well known by some name given to it in the contract, in such

case, no doubt, this would be a sufficient description, and, if necessary, parol proof might be heard to show where the property is." *Johnson* v. *Kellogg,* supra.

In *Dougherty* v. *Chesnutt,* 86 Tenn., 1, 5 S. W., 444, there was a lease of the right to quarry marble on property described as the lessor's "Rose Hill" farm, the instrument showing on its face that the lessor and the lessee both resided in Hawkins county, Tenn., from which the court inferred that the land lay in that county. The proof showed that the place was known and designated as "Rose Hill" by very many people who were acquainted with it, and who were in the habit of visiting the family of the owner—indeed by all the young people in the neighborhood, although some of the old folks called it the Henderson Fudge farm. This description, aided by the proof noted, was held sufficient.

It may therefore be stated, on the authority of the foregoing cases, that a description of land is good within the statute of frauds which on its face appears to refer to some definite tract, and which by the aid of parol proof can with reasonable certainty be applied to designate such tract.

In the application of this rule, however, this qualification must be made. The descriptive terms employed, together with the parol proof, must be such as to point out and comprehend some especial parcel of land to the exclusion of any other parcel of land.

If the description is on its face so indefinite as to be applicable to any tract of land, then parol evidence is not admissible at all "because its effect is to supply by parol a material part of the agreement, which the statute of

frauds requires to be . . . in writing." *Dobson* v. *Litton,* 45 Tenn. (5 Cold.), 616.

A description equally appropriate to lots in five or more towns in Gibson county was held too defective to be aided by parol proof. *Dry Goods Co.* v. *Hill,* 135 Tenn., 60, 185 S. W., 723.

In *Railroad* v. *Webster,* 106 Tenn., 586, 61 S. W., 1018, a description of land as a certain number of lineal feet fronting on a railroad was held void, because it would equally apply to land on both sides of the railroad.

And although the description may not be void on its face, as where a local appellation is used, if the extrinsic proof develops it to be alike applicable to two or more tracts, and does not fasten it on one, then the description, though aided, still fails. This is necessarily true because, in looking beyond the face of a conveyance for proof to save it from inherent uncertainty, the courts proceed under the maxim *id certum est quod certum reddi potest. White's Lessee* v. *Hembree,* 1 Tenn. (1 Overt.) 530. A description not certain in the beginning, which the proof fails to make certain, cannot be saved.

On the trial below the complainants introduced witnesses to show that the land herein sued for was known in the community as the "Jim Smith tract," as follows:

O. P. Pile, J. L. Pile, V. H. Pile, R. C. Pile, Houston Blevins, G. W. Carter, Mitchell Ipock, Alfred Williams, Drew Evans, J. A. Stewart, Joe Williams, Abe Roysdon, John Williams, Albert Hoover, Nancy Doss, Catherine Doss, James Pile, A. J. Mace, Linda Ipock, Hiram Crabtree, and G. F. Ipock.

All of these witnesses do not testify that the land was generally known as the "Jim Smith tract." Some of them testify that they have heard it so referred to, and some of them say that they have heard S. H. Pile so refer to it during his lifetime. It may be conceded, however, that the effect of complainants' proof was to show that the land in suit was generally known as the "Jim Smith tract."

Within the boundaries of the large tract in litigation was a tract of about one hundred and forty acres upon which Jim Smith moved about 1887, and to which he obtained a deed from A. L. Crawford on December 8, 1887. Late Blevins lived on this tract before Jim Smith moved there. Adjacent to this place was another small tract sometimes called the Elijah Smith tract, which Elijah Smith conveyed to Jim Smith March 25, 1877. Jim Smith seems to have cultivated both parcels of land, while he lived on the one deeded to him by Crawford.

Jim Smith appears to have been a man well known in this section. He was a constable, and lived on the place just above mentioned about thirteen years. He was living there at the time of the compromise and the deeds between S. H. Pile and the Crawfords.

Of the witnesses introduced by the complainants, John B. Blevins, testified that the land on which Jim Smith lived "was always known as the 'Jim Smith tract.'" Giles Watson testified to the same effect. So did Catherine Doss, Nancy Doss, Houston Blevins, and Albert Hoover. George W. Carter, a school teacher, testified that everybody in that country knew where Jim

Smith lived. All these were complainants' witnesses.

John Lytton said that since Jim Smith moved on the hundred and forty acre tract that was the only Jim Smith tract he ever knew anything about. Anderson Smith, a half-brother of Jim Smith, stated while Jim Smith owned the one hundred and forty acre tract it went by the name of the "Jim Smith tract." Gran Slaven and Shade Blevins testified likewise to this effect. A. B. Bradford, who, as stated above, was agent of the Crawfords in making the compromise agreement, testified that he asked S. H. Pile at the time what was to be understood by the Jim Smith tract, and that Pile replied it was a small tract of about one hundred acres not far from Giles Watson's. The proof shows the Giles Watson place was near Jim Smith's.

Edward E. Barthell, who was the agent and attorney of defendants' immediate predecessor in title, testified that he had numerous conversations with S. H. Pile while Barthell was examining the title to the lands which his client purchased in this vicinity. He says that he asked S. H. Pile what the Jim Smith tract was, and that Pile told him it was a small tract on which Jim Smith lived.

So from this testimony it is manifest that the description, "Jim Smith tract," was equally applicable to the large tract here in suit and the tract on which Jim Smith lived.

There is nothing to the contrary in the evidence. We are referred by counsel to the testimony of Houston Blevins, John B. Blevins, Jacob Blevins, John Miller Burk, and Jim Smith himself as showing that Jim

Smith's home tract did not go by his name, but was called the "Late Blevins tract." None of these witnesses undertake to say that the one hundred and forty acre tract was not called the "Jim Smith tract," as well as the "Late Blevins tract." Some of them say that it was called the "Jim Smith tract" also. A tract may have two names, as "Rose Hill" or "Henderson Fudge farm." *Dougherty* v. *Chesnutt*, supra.

Jim Smith himself does undertake to say that his home place was called the "Late Blevins tract" while he lived there, and was not called the "Jim Smith tract" until after he left. He admits, however, that the Elijah Smith tract, which he also owned and cultivated, adjacent to the tract of one hundred and forty acres conveyed to him by Crawford, may have been called the "Jim Smith tract" before he left.

So, upon the whole proof, there is no evidence to confine the description of the Jim Smith tract to the large boundary sued for. There is no evidence to exclude the application of this description to the land on which Jim Smith lived or which he cultivated.

The whole proof showing that the appellation "Jim Smith tract" was applicable to other land as well as the land sued for, and there being no proof that it was not so applicable, there was no issue of fact in this connection; nothing to go to the jury.

An inference is sought to be drawn from the evidence that the parties must have intended to refer to the large tract sued for in the papers executed by them. It is said that Pile owned all the land awarded to him in the settlement except the large Jim Smith tract, and

unless he took that tract he gained nothing. That the parties, therefore, must have intended to characterize the large tract as the Jim Smith tract. The basis of this inference is not available to complainants. The compromise agreement itself recites that Crawford was seeking to recover the Washington Young tract in the suit at Knoxville. Pile took this tract under the compromise, it being about ten thousand acres in extent, free from Crawford's claims.

The testimony of one witness in the record that a tract of land was always known by the name of the last owner is no evidence that Jim Smith's home place was not known as the "Jim Smith tract" while he lived there. Proof of a custom could not be considered against proof of a contrary fact offered by several witnesses.

The situation is further complicated by the existence of a small tract of land in Scott county in this neighborhood deeded by James Smith to Omar Terry.

Some other arguments are made to show that the parties intended to pass title to the large Jim Smith tract in their compromise agreement but they amount to mere conjectures. Equally plausible conjectures might be made to the contrary.

The result of our cases heretofore announced is in entire harmony with the general rule elsewhere.

"Where, however, the memorandum on its face appears to refer to a definite parcel of land, the description need not be such as to render entirely needless a resort to extrinsic aid to identify the property. It is enough if the description be sufficient, with the assistance

of external evidence, to fit and comprehend the property which is the subject of the transaction to the exclusion of all other property." 20 Cyc., 270.

What we have said indicates the ground upon which we place this decision, but a few observations in conclusion will not be amiss.

This case cannot be assimilated to any of those relied on by the complainants. In *Farris* v. *Caperton,* supra, and *Dougherty* v. *Chestnutt,* supra, there was no suggestion that the local names used were applicable to other tracts of land than those in controversy.

We have so far ignored the location of the Jim Smith tract "in Scott county" contained in the deed from the Crawfords to Pile. If this is permissible, then we have a description which does not contain the county in which the land was located. This seems to have been considered important in *Dougherty* v. *Chesnutt,* supra, and the court inferred that the land was situated in Hawkins county, Tenn., because the lease showed the parties to the instrument resided in that county. We can infer nothing as to the county in which this land is located from the statement of the papers before us as to the residence of the parties thereto. The Crawfords lived out of the state, and, while it appears that S. H. Pile was a resident of Fentress county, yet the settlement undertook to deal with land in Fentress, Scott, and Pickett counties.

It was held in *Wood* v. *Zeigler,* 99 Tenn. 515, 42 S. W., 447, that a description of property as the "Baldwin place" in an instrument which did not show where the parties thereto resided was fatally defective.

The compromise agreement, the deed from Pile to the Crawfords, and the deed from the Crawfords to Pile should doubtless be construed together. If we so construe them, then, in order to harmonize them, all should be read as locating the Jim Smith tract in Scott county.

We could not treat the reference to Scott county as erroneous and ignore it under the authorities relied on by the complainants. *Todd* v. *Cannon,* 27 Tenn. (8 Hump.), 512; *Winchester* v. *Winchester,* 38 Tenn. (8 Head), 488, and others. In these cases the description contained locative calls that showed the name of the county was erroneously given, and it was accordingly rejected. There is no such locative call in the description here.

If we consider the land to have been described as lying in Scott county, and are unable to reject the reference to Scott county, then all the parol evidence locating the land in Fentress county becomes inadmissible as tending to vary or contradict a written instrument.

This case cannot be likened to a partition between tenants in common which might be made by parol. Pile was claiming the Washington Young tract and other tracts in severalty and adversely, and this settlement could not have been made without written instruments, and the sufficiency of these instruments must be tested by ordinary rules.

The case of *Pile* v. *Smith* depends on the main case. The remaining complainants in the companion case claim under the Piles. The dismissal of the bill in the main litigation carries with it the other suit.

The decree of the chancellor is affirmed.