IDA FLYNN WILLIAMS, et al. v. W. A. BUNTIN, Admr., etc., et al.

Middle Section.   February 19, 1927.

Petition for Certiorari denied by Supreme Court April 4, 1927.

1. **Frauds, Statute of. An agreement to devise lands is within the statute of frauds.**
   It is well settled in Tennessee that an agreement to devise land is within the statute of frauds.

2. **Frauds, Statute of. Parol evidence not admissible to supply description of land in instrument.**
   If the description on the face of the instrument is so indefinite as to be applicable to any tract of land, the court will not receive evidence to describe the land and then apply the description, as parol evidence can only be resorted to for the purpose of identifying the description contained in the writing. It is admissible to apply, not to supply, the description of the land in the instrument.

3. **Frauds, Statute of. Memorandum may be in two or more papers.**
   The memorandum required by the statute of frauds may be in two or more papers. It is not required to be in a single document. Where it is evidenced by two or more papers, it is not required that each paper of itself be sufficient in content to satisfy the statute. If the two or more writings properly connected, construed together, render certain the description of the property, the memorandum is sufficient.

4. **Contracts. A contract to make a will is broken only when the party dies.**
   A contract to make a will is broken when the party dies without making it in compliance with the terms of such promise. The party has until his death to perform the covenant and the obligation is not breached until that event occurs and renders compliance impossible.

5. **Conracts. Measure of damages for failure to bequeath and devise property defined.**
   In case of the breach of a contract to bequeath and devise property where the promisee has performed in full his covenants the measure of damages is the value of the property which the promisor obligated himself to bequeath and devise, at the time of the breach.

6. **Frauds, statute of. It is not necessary that memorandum be executed at the time contract is made.**
   The memorandum may be executed subsequent to the formation of the contract by the parties, and at any time before action brought.

7. **Frauds, statute of. Parol evidence admissible in interpretation of memorandum, when.**
   Parol evidence showing the fact of delivery and receipt of the several writings, including time, place, situation of property and parties, and other circumstances, may be received to aid in the interpretation.

8. **Frauds, statute of. It is not necessary that party charged should have subscribed each paper forming a part of the memorandum.**
   Where it was sought to establish a memorandum to take a case of the statute of frauds held in cases of this character it is not essential that the party charged should have subscribed each paper forming a part of the memorandum. If the several writings upon their faces, viewed in the light of the situation and circumstances of the parties at the time they were

written, clearly relate to, and connect themselves with, each other, and when their contents are adjusted, and adapted to each other, according to their reasonable and practical import, involving in form and order the manifest sense and meaning of the parties, there appears to have been clearly made known the names of the contracting parties, the subject-matter of the sale, and the consideration, and if it appears that all this has received the sanction of the subscription of the party to be charged, or some person by him thereunto lawfully authorized in writing, the statute requirement in reference to subscription, as well as all other particulars, is met.

9. **Frauds, Statute of.** It is not necessary that express mention be made in one document of another.

The rule does not necessarily require express mention in one document of another or in each of all the other documents.

10. **Frauds, Statute of. Evidence.** Evidence held sufficient to take care out of the statute of frauds.

In an action to enforce a contract to will property where the evidence showed a letter from deceased to the complainant stating that if she would come and live with deceased, the deceased would will her certain property and mentioned a certain store but did not give the name of the town or state in which the store was located, but other letters and papers of deceased gave the proper location of the store, held that the letters and writings were sufficiently identified and connected to establish a memorandum which would take the case out of the statute of frauds.

11. **Contracts.** Where a new contract is consistent with the continuance of the former one and only provides a new mode of discharging the same, it has no effect as a rescission unless or until it is performed.

In an action to enforce a contract to will real estate where it was insisted that the contract had been abandoned by another letter where-in deceased agreed to deed the property, but where the evidence showed that this was simply an intention of carrying out the former contract, held that the new proposal would not discharge the old contract since the new one was never carried into effect.

Appeal from Part II, Chancery Court, Davidson County; Hon. James B. Newman, Chancellor.

Affirmed.

Mary M. Ryan and Walter Stokes, of Nashville, for appellant.

John J. Vertrees, Wm. L. Granberry and William O. Vertrees, all of Nashville, for appellee.

FAW, P. J. This suit was brought in the chancery court of Davidson county, Part II, on January 5, 1925, by Mrs. Ida Flynn Williams and her husband J. T. Williams against W. A. Buntin, administrator of the estate of Mrs. Rachel Craighead, deceased, Mrs. Elsie C. Buntin, Thomas C. Buntin, May Winston Buntin and Fourth and First Bank and Trust Company, trustee. The defendant May Winston Buntin is a minor represented by guardian ad litem.

On final hearing in the chancery court a decree was entered (on September 18, 1925) in favor of the complainants, granting to them the relief prayed for in the bill, and the defendants thereupon prayed,

obtained and perfected an appeal to this court and have assigned errors here.

The "finding of facts and opinion," filed as a part of the record, contains a clear statement of the material issues made by the pleadings, and also the Chancellor's conclusions of fact and law, and is in full as follows:

"This is a proceeding to recover twenty-six thousand three hundred dollars ($26,300) damages for breach of a contract by Mrs. Rachael A. Craighead, deceased, evidenced by a letter, to bequeath and devise in her will, certain property to Mrs. Williams, and to set aside certain conveyances as voluntary and void as against said indebtedness.

Defendants insist that the contract was mutually abandoned and annulled by the parties; that it is ineffectual, inoperative and voidable under the statute of frauds, which they plead and rely upon. They admit the conveyances attacked were voluntary and void as against bona fide creditors who cannot otherwise be satisfied from the assets of Mrs. Craighead's estate, and aver their willingness and ability to pay any judgment complainant may recover against said estate, without the necessity of setting aside any of said conveyances or selling any of the real estate.

The controlling and determinative facts and the legal principles conceived to be applicable thereto, follow:

Mrs. Rachel A. Craighead, deceased, was a daughter of Mrs. Daniel Carter, born December 11, 1838, and died February 24, 1924. She was a lady of fine social standing and abundant means. In 1859 she married Thos. D. Craighead and became a childless widow in 1898. From about 1873 to 1907—the date of her mother's death—she and her mother lived together in a fine old mansion in the City of Nashville, and at their summer home "Rock Rest," in Robertson county, Tennessee. Mrs. Carter, her mother, was possessed of a large estate which she at one time disposed of by will, but in 1901, she conveyed by deed all of her property to her only child, Mrs. Craighead.

Mrs. Craighead's Nashville residence was converted into business property in 1913, and from that period to her death, she made her home part of the time with her adopted son, Daniel C. Buntin, in the winter, and from May to late in the fall at Rock Rest. She had a large estate, worth about five hundred thousand dollars, which she conveyed in trust, and in part to her adopted son and his wife. The annual income therefrom was about twenty thousand dollars. Her adopted son's health failed two or three years before his death in 1923, and thereafter Mrs. Craighead relied upon her cousin and adopted son's brother, Allison Buntin, and his lifelong friend Mr. James E. Caldwell, for guidance and advice in her business affairs.

Allison Buntin, Mr. Caldwell and Mrs. Elsie C. Buntin, testified that Mrs. Craighead was mentally unsound from July or the late fall of 1923 to her death. in 1924, while Mrs. Williams testified that she was mentally unsound and incapable of attending to her business from the summer or fall of 1922 to her death.

In 1873, Mrs. Craighead took into her home Ida Flynn, an orphan, who was then twelve years old, and she continued a member of the family until she was twenty-one years old in 1882, when she went to West Tennessee to teach in the public schools at Kenton. Mrs. Craighead sent Miss Flynn to the public schools in Nashville and she graduated from the Hume High School and took an A. B. degree at Peabody College in 1882. Miss Flynn was married to J. T. Williams of Texas in 1903, at Rock Rest, and Mrs. Craighead gave a grand reception and a chest of silver as a marriage present. Thereafter Mrs. Williams, with the exception of the summers of 1910 and 1916, was a guest at Mrs. Craighead's home up to the year 1923.

In the spring of 1898, Mrs. Craighead's husband was taken ill, and in May of that year died. Mrs. Williams, who was then connected with a private school at Kenton, came to Nashville and remained with Mrs. Craighead until after the death of her husband. After Mrs. Williams returned to Kenton from this visit she received a letter from Mrs. Craighead, which is the basis of this lawsuit, and is in the words and figures following:

"Nashville, Tenn.
"June 7, 1898.

"My dear Ida—

"I know you are making money on your school, but I want to make you a business proposition too.

"We are lonely in this big house, and afraid especially at night. We couldn't bear to bring a stranger in, and you are the only unattached female in the family—so if you will consider this and give up your school, and come to make your home with Ma & I for three or four years, I will compensate you, handsomely.

I will leave you in my will my little store on the south side of the Public Square, near College st.—and I will give you $250 or $300 every year for spending money, as long as I am able to do so. I will also leave you my rosewood bed-room set and give you my handsome opal and diamond ring—and the emerald and diamond ring (three stones) that I always wear.

"By being our companion I do not mean that you have to spend every day and hour with us. You will be free to go and come as you wish—just so you take care of us—as you would your own—you see we are always afraid in this big house and dreary—you always cheer us up.

"Now before you decide I want you to consult Mr. Clark. Ask Daisey or any close friend—entre nous, but do not make my business public.

"Can't you close up down there and come to us by July 1st for good? You know Mary Harris is going to be with us in the country—that will make you happy—

"God bless and guide you my dear Ida. I am anxious to have you with us, and you will never regret it.

"With love—

"Your true friend,
"Miss Puss—"

In response to this letter, Mrs. Williams returned to Nashville and lived with Mrs. Craighead until 1902—the term prescribed in the letter. During these four years she was away from Mrs. Craighead's home for some time in Columbia, Tennessee, and in Colorado, but her absence was with the full knowledge and consent of Mrs. Craighead.

Daniel C. Buntin was a first cousin of Mrs. Craighead, and was a member of her family from the time he was seven years old until his adoption by her in 1901, and for some time thereafter. During all of this period of time, he was treated as a member of the family and was looked upon by Mrs. Craighead as her business adviser and manager. He was absent from her home for about four years in Chicago, and was living in Wyoming at the date of his death, January 18, 1922. As stated, after the death of Daniel C. Buntin, and for some time prior thereto, Mrs. Craighead consulted and followed the advice in the management of her property of his brother, Allison Buntin, and of Mr. James E. Caldwell.

Daniel C. Buntin married Elsie C. Caldwell, daughter of James E. Caldwell, in 1901, and of this union there were born two children. Mr. Buntin and his wife and children lived in the home of Mrs. Craighead all of their married life, except that part which he spent in Chicago and Wyoming, and in his home in Kensington Place in Nashville. The relation of Mrs. Craighead to Mr. Buntin was that of a mother to a son, and she entertained great love and affection for him, and for Mrs. Williams, whom she had raised and educated from a little orphan girl.

A large number of letters are in the record from Mrs. Craighead to Mrs. Williams, which display the deep and abiding affection which she entertained for Mrs. Williams. Mrs. Craighead was upright and honorable in all of her business dealings, and retained her mental faculties up until sometime prior to her death, when she became enfeebled, mentally and physically.

It was the purpose and desire of Mrs. Craighead until less than a year before June 3, 1922, when it was sold and conveyed to Chas. B. Whitworth,—that Mrs. Williams should have her little store on

the south side of the Public Square near College street, in Nashville, Tennessee. This is shown by the proof, and especially by the letter of August 23, 1921, which is in the words and figures following:

"August 23/1921.

"I hereby authorize Ida Flynn Williams to have my little store at 221 Public Square deeded to herself at once and to keep the decd.

"R. A. Craighead."

"I suggest that she get Mr. Vertrees to do this because he wrote my will. Rock Rest."

and also the letter of August 1918, which is in words and figures as follows:

"Rock Rest, Aug., 1918.

"Dear Ida:

"This is a letter for you to show to Dan, and he will deed your little store to you, immediately.

"R. A. Craighead."

"I love you and want you to have it for you have done much for me."

"Rock Rest, Aug., 1918.

"My dear Dan:

"I want you to carry out this promise for me.

"Cousin Puss."

"For value received, I promise to deed to 'Ida Flynn Williams,' on or before Jan. 1, 1919, the little 'Cigar Store' on the south side of the Public Square near College st., Nashville, Tenn., and I will record the deed.

"Rachael A. Craighead."

"I already have left this piece of property to Ida Flynn in my will, and am hereby giving it to her so that she may have it safe, before I die.

"Rachael A. Craighead."

These letters not only show that it was her purpose and desire that Mrs. Williams should have this property, but they show unmistakeably that Mrs. Williams' absence from Mrs. Craighead's home in the four-year-period of time from 1898 to 1902, was with her approval and that she did not consider that Mrs. Williams had not performed in full her obligation under the contract of June 7, 1898.

The letter of August, 1918 also discloses that at that time Mrs. Craighead had a will. In 1898 when the letter of June 7th was written by Mrs. Craighead to Mrs. Williams she and her mother Mrs. Carter were living together, and Mrs. Craighead did not own the property therein referred to, but did acquire it by deed in 1901. Their estates were considered as joint and several by them, Mrs. Craighead being the only heir of Mrs. Carter at that time, and as

Mrs. Carter was very old and feeble, it was but natural that Mrs. Craighead should look upon this property as hers.

In the years of 1921, 1922 and 1923, Mrs. Craighead conveyed all of her property to the Fourth and First Bank and Trust Company, trustee, in trust for her life, and the lives of Elsie Caldwell Buntin and children, with remainder to heirs of the two children. The net income was to be paid to Mrs. Craighead for life, and at her death to Mrs. Buntin and two children for their lives. This was all the property she owned except 700 acres in Robertson county which she conveyed to her adopted son, Daniel C. Buntin and wife, and the store-house involved, which she conveyed to Charles B. Whitworth.

On June 23, 1922, Mrs. Craighead, when 84 years of age, sold and conveyed the little store-house on the south side of the Public Square involved in this cause, to Mr. Whitworth for the consideration of $25,-000. As stated, Mrs. Craighead died February 24, 1924. Soon after the sale of this store-house Mrs. Williams, while on a visit to Nashville, learned of it and consulted an attorney about her rights, and also Mrs. Craighead's business adviser Mr. Caldwell, but she did not speak to Mrs. Craighead about the matter because at the time she learned of the sale of this property she considered that it would have been cruel to have talked business with her, as she was greatly enfeebled in mind and body and unable to attend to business matters.

The letter of June 7, 1898, is within the statute of frauds and is insufficient in law by and of itself to be the basis of an action for breach thereof. Watts v. Warner, 269 S. W., 913; Holms v. Johnson, 12 Heisk., 156; Dry Goods Co. v. Hill, 135 Tenn., 62, 185 S. W., 723; Case v. Brier Hill Collieries, 145 Tenn., 12, 235 S. W., 57.

It is settled in this State that an agreement to devise lands by will is within the statute of frauds. Goodloe v. Goodloe, 116 Tenn., 252, 92 S. W., 767; Williston on Contracts, Vol. 1, sec. 488, p. 447.

If the description on the face of the instrument is so indefinite as to be applicable to any tract of land, the court will not receive evidence to describe the land and then apply the description, as parol evidence can only be resorted to for the purpose of identifying the description contained in the writing. It is admissible to apply, not to supply, the description of the land in the instrument. Dougherty v. Chesnutt, 86 Tenn., 1, 5 S. W., 444, 25 R. C. L., p. 650, sec. 282.

Neither the city, county or State are given in the body of the letter of June 7, 1898. The letter does not locate the real estate in any town, county or State. The heading of the letter (Nashville, Tenn.) relates only to the place where written. If this had followed the description in the body of the letter, it would have been a sufficient description under the statute. The description is applicable to "any little store on the south side of the Public Square near College street," in any town that has a Public Square and a College street.

It would take parol evidence to supply the omission of the city, county and State in this letter.

There are cases in other jurisdictions which rule that where the name of a city and State appear at the head of a written instrument, the description is sufficient, but our case of Holms v. Johnson, supra, is controlling on this point.

The letter dated "Rock Rest, Aug., 1918" directed to "my dear Dan" shows upon its face that Mrs. Craighead had received value for her promise to deed "the little cigar store on the south side of the Public Square near College street, Nashville, Tennessee," to Mrs. Williams. It further shows on its face that she had left this piece of property to Ida Flynn, now Mrs. Williams, in her will. The letter addressed to "Dear Ida" forming part of the letter to "My dear Dan," reveals her love for Ida and that Ida had "done much" for her.

The letter of June, 1898, contains a promise to make a will and leave her the little store on the south side of the Public Square near College street, and the letter of August, 1918, shows that she had made such a will and left this property to Ida Flynn (Mrs. Williams). The description in the letter of August, 1918, is sufficient under the statute of frauds relied on in this case. It locates the property as the "little cigar store on the south side of the Public Square near College street, Nashville, Tennessee." We therefore have a writing which, in the body thereof, locates the property in a designated town and State. The property is specifically described therein, and the proof applies the description to the property owned by Mrs. Craighead and conveyed by her to Mr. Whitworth. This is a sufficient description. Dougherty v. Chesnutt, supra.

The memorandum or note required by the statute of frauds may be in two or more papers. It is not required to be in a single document. Where it is evidenced by two or more papers, it is not required that each paper of itself be sufficient in content to satisfy the statute. If the two or more writings properly connected, construed together, render certain the description of the property, the memorandum or note is sufficient.

An explicit or express reference in one document to another incorporates the latter in the former so as to allow the two to be construed together. However, an express reference is not necessary to justify the consideration of the two or more writings together. The connection of the writings may be implied where they relate to the same parties, subject-matter and transaction. 27 C. J., secs. 308-309, p. 259-262.

In an able treatise on the statute of frauds in that work, on page 262, it is said:

"An express reference is not necessary to justify the consideration of two or more writings together; the connection of the writings may be implied where their contents show that they relate to the same parties and subject-matter, and are parts of one and the same transaction. It is a general rule that the reference, relation or connection of the writings to or with each other must appear on their face. The writings must contain either an express reference to each other or internal evidence of their unity, relation or connection. . . . Where there is no express reference from one writing to another, and consequently the writings must contain internal evidence of their identity and unity as constituting a single transaction, to justify their consideration together."

In support of this text, a large number of American and English cases are marshalled, including two Tennessee cases,—Blair v. Snodgrass, 1 Sneed, 1, and Adams v. Scales, 1 Baxter, 337.

In the case of Blair v. Snodgrass, the Supreme Court said:

"Nor is it necessary that the contract should be contained in a single document. It will be sufficient if it can be plainly made out, in all of its terms, from any writings of the party, or even from his correspondence. But when several papers are relied upon for written evidence of a sale of land, these papers must afford intrinsic proof that they relate to the same contract of sale. Parol evidence is inadmissible to connect them, or to show that they relate to the same transaction. This is a well-settled rule under the statute of frauds."

In the case of Lee v. Cherry, 85 Tenn., 709, 4 S. W., 835, it was ruled that letters passing between parties that referred to and connected with each other, and contained a sufficient description of the property, was a sufficient note or memorandum to render the statute of frauds inapplicable.

In the very late case of Huffine v. McCampbell, 149 Tenn., 59, 257 S. W., 80, Judge Malone, speaking for the court, said:

"And it is immaterial as to the number of papers which connected together make out the memorandum."

The letter of August 23, 1921, does not on its face bear any express reference, relation or connection to the letter of June 7, 1898, but it reveals plainly that as late as 1921, Mrs. Craighead still desired that Mrs. Williams should have her little store on the Public Square. At that late date,—a little over two years before her death—she did not consider that Mrs. Williams had not complied with her contract of June 7, 1898, by failing to remain with her the full four years.

The letter of August 23, 1918, shows on its face that it relates to the same parties, subject-matter and transaction as the letter of 1898, because it expressly refers to the will which Mrs. Craighead

agreed to make in the letter of June 7, 1898, and that Mrs. Williams "had done much" for Mrs. Craighead, which constituted the value received by Mrs. Craighead, and on its face affords intrinsic proof that it relates to the transaction covered by the letter of June 7, 1898.

. As stated in the authorities quoted above, it is not necessary for an express reference to justify the consideration of two or more writings together. The connection of the writings may be implied where their contents show that they relate to the same subject-matter and transaction. When the paper of August, 1918, is considered in connection with the writing of June 7, 1898, the description of the property which Mrs. Craighead agreed to will Mrs. Williams is entirely sufficient under the statute of frauds, and these papers, under the authorities, must be considered together. It follows that the statute of frauds is insufficient to defeat the recovery sought in this case.

A contract to convey an expectancy is valid and enforcible. Taylor v. Swafford, 14 Cates, 307, 123 S. W., 350.

A contract to make a will is broken when the party dies without making it in compliance with the terms of such promise. The party has until his death to perform the covenant and the obligation is not breached until that event occurs and renders compliance impossible. A will is effective from the death of the maker.

In case of the breach of a contract to bequeath and devise property where the promisee has performed in full his covenants the measure of damages is the value of the property which the promisor obligated himself to bequeath and devise, at the time of the breach. Page on Contracts, Vol. 5, sec. 2935 (2nd Ed.) ; Page on Contracts, Vol. 6, sec. 3235 (2nd Ed.) ; Sutherland on Damages (4th Ed.), sec. 679, p. 2469 ; Elliott on Contracts, Vol. 3, sec. 2220, p. 404.

In 17 C. J., p. 866, discussing the subject the doctrine is thus stated: "Where, however, the contract is not to pay a sum stated in property but is to pay specific property, the measure of damages is the value of the property at the time of the breach."

The opal and diamond ring referred to in the letter of June 7, 1898, was sent by Mrs. Elsie C. Buntin to Mrs. Williams before the death of Mrs. Craighead, but the emerald and diamond therein referred to and the remainder of the property was never delivered to Mrs. Williams. The emerald and diamond ring, according to the undisputed proof in the case, was worth $300 at the death of Mrs. Craighead. The rosewood bed-room suite is claimed by Mrs. Williams to to be worth $1000 and by Mrs. Elsie Caldwell Buntin to be worth $150.

It appears that in 1916 Mrs. Craighead, in a letter to Mrs. Williams, places a value of approximately $400 to $500 on this furniture, offering to pay her $250 and give her the rosewood library table,

book case and arm chair for it. The court finds the value to be, at the date of the death of Mrs. Craighead, February 24, 1924, $500.

It appears from the proof that on June 3, 1922, the real estate involved was sold to Mr. Whitworth for $25,000 and that in June, 1898 this property was worth less than $7000. However, at the date of the sale it had greatly enhanced in value. It is fairly deducible from the proof in the record that it was of the value of $25,000 on the date of the death of Mrs. Craighead, February 24, 1924.

In defendants' answer, referring to this property, it is admitted—

"And it was of the value of $25,000 at the time of Mrs. Craighead's death."

The amount of damages for the breach of the contract to convey this property by will as of the date of Mrs. Craighead's death is fixed by the court at $25,800.

It appears from the record in this cause that Mrs. Craighead's estate has not been finally administered, and that in the answer of the defendants, they admit that the conveyances attacked in the original bill are voluntary and void against bona fide creditors, who cannot be satisfied from the assets of Mrs. Craighead's estate, and they aver their willingness and ability to pay any judgment that the complainant may recover, without setting aside these conveyances.

"The complainant is entitled to recover of the estate of Mrs. Rachel A. Craighead, deceased, for breach by Mrs. Craighead of the contract of June 7, 1898, to make a will devising and bequeathing the property therein described to Mrs. Williams, the sum of $25,000, together with interest from the date of the filing of the bill, January 5, 1925, and the costs of the cause. No decree will be entered setting aside the conveyances attacked and ordering a sale at this time, but if the judgment herein awarded is not paid within thirty days from its rendition, a further order will be entered in this cause setting aside the conveyances and ordering a sale of the property.

"Decree accordingly,

"Newman, Chancellor."

An additional finding of facts was made by the Chancellor in response to a petition of defendants. The additional facts thus requested (so far as the petition was granted) were:

(a) to set out the letters written by Mrs. Williams to Mrs. Craighead from Columbia, Tennessee,—one dated September 12th and the other October 10, 1899, and being exhibits to the deposition of the complainant Ida Flynn Williams, and being two letters showing the presence of Mrs. Williams in Columbia as one of the teachers at the Columbia Institute in the fall and winter of 1899.

(b) Also the admission by the complainant that her name appears as a teacher in the catalogue issued by the Columbia Institute for

the years of 1900 and 1901; and the fact that she was present in Columbia in the month of January, 1900, teaching at the Institute.

(c)   Also to set out the three letters written by complainant to Mrs. Craighead from Colorado on November 5, 1901, and exhibited with the deposition to Mrs. Elsie Caldwell Buntin.

(d)   Also the letter dated November 20, 1901, and set out in the deposition of Mrs. Buntin.

(e)   The statement of the complainant to Mr. Caldwell in the summer of 1922, and contained in the deposition of the complainant, in answer to a question, in which she says: "His advice was to go and get a good lawyer, and he said 'you get a good lawyer and present your claim and if it is just, it will be allowed.' "

In the final decree it was ordered, adjudged and decreed by the court as follows:

"(a)   That the contract of June 7, 1898, sued on in this cause is valid and enforcible, and Rachel A. Craighead, deceased, breached the same by failing to make a will bequeathing and devising the property therein described to Ida Flynn Williams.

"(b)   That Ida Flynn Williams have and recover of W. A. Buntin, in his capacity as administrator of the estate of Mrs. Rachel A. Craighead, deceased, for breach of said contract, the sum of $25,800 damages, with interest from the date of the filing of the bill, January 5, 1925, amounting to $1070.70, together aggregating $26,870.70, and the costs of this cause.

"(c)   If the sum herein decreed is not settled within thirty days from the entry of this decree, a further order will be made in this cause, setting aside the conveyances attacked in the bill, and ordering a sale of the property therein described to satisfy the recovery herein awarded.

"The petition of complainant for additional findings of fact, the answer of defendants thereto, with ruling of the court thereon, are filed and ordered made a part of the record in this case."

Upon the foregoing findings, opinion and decree of the Chancellor the appellants have assigned errors as follows:

"The court erred:

"1.   In not holding that the contract of June 7, 1898, was abandoned and abrogated by mutual consent during the 'four-year' period, and long before it expired, and was not in force thereafter.

"2.   In not holding the contract of June 7, 1898, was abrogated and annulled by the mutual consent and agreement of Mrs. Craighead and Mrs. Williams during the 'four-year' term, and prior to its expiration, and was never in force, nor considered by the parties as being in force thereafter during Mrs. Craighead's life.

"3.   The two letters dated August, 1918, and the letter dated August 23, 1921, set out in the Chancellor's opinion cannot be con-

sidered and read in connection with the letter of June 7, 1898, in order to supply its deficiency in the description of the land which was the subject-matter of the contract, for the reason that they afford no intrinsic evidence that they refer to the same contract evidenced by the letter of June 7, 1898—upon which the suit is based. It relates to a contract to devise the 'little store' by will. The letters relate to a new agreement or promise to convey in the lifetime of Mrs. Craighead by deed.

"4. The writings, or letters, of 1918 afford no intrinsic evidence that they relate to the contract, or transaction of July 7, 1898. As a consequence, they cannot be considered in connection therewith or as a part thereof."

Mrs. Craighead's letter to Mrs. Williams, dated June 7, 1898, is deficient in the description of the real property which Mrs. Craighead proposed to leave to Mrs. Williams in her will; otherwise this letter contains all the essential elements of the memorandum required by the statute of frauds. Shan. Code, sec. 3142.

As we have seen, the Chancellor held that the deficiency in the letter of June 7, 1898, with respect to the description of the land mentioned therein, was supplied by subsequent writings signed by Mrs. Craighead. As we understand the record and briefs, it is not claimed that the deficiency was not thus supplied, if, under the law (when applied to the facts of this case), the subsequent writings of Mrs. Craighead upon which complainants are relying may be found to relate to the same transaction as the letter of June 7, 1898, and all of the writings may be considered together as constituting the memorandum required by the statute of frauds. But the appellants assert, through their third and fourth assignments of error, that the Chancellor erred in reading and considering the subsequent writings of Mrs. Craighead, particularly the letter of August, 1918, in connection with the letter of June 7, 1898, in order to supply the deficiency in the last mentioned letter with respect to the description of the "little store on the south side of the Public Square, near College st.;" and we shall first consider the question thus presented.

The letter of August, 1918 contains a sufficient description of the "little store"—certainly sufficient to admit parol proof to apply the description to the property intended. The letter was addressed to "My dear Dan" (Mrs. Craighead's adopted son and business adviser, Dan C. Buntin), but it was delivered by Mrs. Craighead to complainant Mrs. Williams and contains a promise for the benefit of Mrs. Williams, with respect to the "little store," and an acknowledgment that the promise was made "for value received." It also contains an acknowledgment, or statement, by Mrs. Craighead that she had already "left this piece of property to Ida Flynn" in her

will; but it does not contain an express reference to the letter of June 7, 1898.

"An instrument so drawn as to recognize the obligation, though not for that special purpose, will, if it is delivered to the other party and accepted by him, suffice for a memorandum under the statute. . . . Courts of equity are not particular as to the direct and immediate purpose for which the written evidence of a contract is created. . . . Letters addressed to a third party, for instance, stating and affirming a contract, will be used against the writer as a memorandum of it." Browne on Statute of Frauds, (3rd Ed.), sec. 354. It was held in the case of Poel v. Brunswick-Balke-Collender Co., 159 App. Div., 365, 144 N. Y. Supp., 725 (cited for appellants in support of the third and fourth assignments of error), that a letter repudiating an alleged agreement and denying liability thereon may constitute the memorandum required by the statute of frauds.

The memorandum may be executed subsequent to the formation of the contract by the parties, and at any time before action brought. Browne on Statute of Frauds (3rd Ed.), sec. 352a; Huffine v. McCampbell, 149 Tenn., 47, 59, 257 S. W., 80; Hudson v. King, 2 Heisk., 560, 563; Macon v. Sheppard, 2 Humph., 334, 338; 27 Corpus Juris, p. 263, sec. 312.

It is competent to show the circumstances of the possession and ownership of the property, the situation of the parties and their relations to each other and to the property, as they were when the negotiations took place and the writings were made, in order that the court may be placed in the position of the parties themselves. In the case of Gregory Company v. Shapiro (Minn.), 145 N. W., 791, 793 (cited in appellants' brief), it is said: "Parol evidence showing the fact of delivery and receipt of the several writings, including time, place, situation of property and parties, and other circumstances, may be received to aid in the interpretation."

In 25 R. C. L., pp. 651-652, it is said: "The situation of the parties and the surrounding circumstances when the contract was made may be shown by parol evidence, so that the court may be placed in the position of the parties themselves, and if then the subject-matter is identified it is enough."

The learned and able counsel for appellants cite the case of Manning v. Pippen, 95 Ala. 544, 11 Sou., 56, in support of the rule (not now controverted in this case) that an agreement to devise land by will is within the statute of frauds. The same court has spoken, in some forceful opinions, upon the question we are now considering. As early as 1880, the Supreme Court of Alabama, speaking through Mr. Chief Justice Brickell, said:

"It is oral evidence of contracts which ought to be reduced to writing, and signed by the party to be charged, and not to written evidence of such contracts, the statute of frauds is directed. Whenever evidence of the contract is found in writing, signed by the party to be charged, which is certain and definite, there is no danger of fraud and perjury, and it is fraud and perjury the statute intends to prevent. The form of the writing is not important, nor are the purposes for which it may have been intended at all conclusive. In Bailey v. Sweeting, 9 C. B. N. S. (99 E. C. L.), a letter, in terms repudiating liability, but admitting the making of the contract, signed by the party to be charged, was received as a memorandum sufficient to meet the requirements of the statute. The purposes of the statute were all met—the contract was shown by writing; the danger of fraud or perjury was avoided; and the court was not in uncertainty as to the contract it was required to enforce. The statute-book contains no more salutary enactment than the statute of frauds. We intend a rigid adherence to its terms and purposes. We would not, if we had the power, add to it exceptions, or relax its operation, to meet the necessities and justice of particular cases. But, when the words of the statute are satisfied—when all its purposes are met—when a contract is in writing, or when there is in writing a note or memorandum of the contract, certain and definite in its terms, signed by the party to be charged, there is all the evidence the statute requires, and it is without application or operation.

"When the memorandum of April 3, 1871, is taken and read, as it must be, in connection with the deeds subsequently executed, there is no doubt or uncertainty as to the terms of the contract for the sale of the lands. True, the deeds do not expressly refer to the memorandum; but they were all executed as parts of a single transaction, between the same parties, having reference to the same subject-matter. The rule is general, that several papers, relied on to meet the requirements of the statute of frauds, should on their face indicate a reference to each other. Carter v. Shorter, 57 Ala., 253; Knox v. King, 36 Ala., 367. The rule is not absolute, and there are cases in which parol evidence of cotemporaneous facts, and of the circumstances in which the parties were when the writings were signed, will be received to show their connection. Thayer v. Luce, 22 Ohio St., 62; Salmon v. Goddard, 14 How., 446; Beckwith v. Talbot, 95 U. S., 289. As is said in the case last cited: 'There may be cases in which it would be a violation of reason and common sense to ignore a reference which derived its significance from such proof. If there is ground for any doubt in the matter, the general rule should be enforced. But, when there is no ground for doubt, its enforcement would aid, instead of discouraging fraud.'

The implication of connection between the memorandum and the deeds is almost irresistible, from their mere inspection, and there was no just objection to parol evidence of the cotemporaneous facts, and the circumstances surrounding the parties showing that they were but parts of the same transaction. Browne on Stat. Frauds, Par. 350.'' Jenkins v. Harrison, 66 Ala., 345, 359.

In the later case of White v. Breen, 106 Ala., 159, 19 Sou., 59, 32 L. R. A., 127, 129, it is said:

''The principles of law growing out of our statute of frauds, in reference to contracts for the sale of land or any interest therein, have been often and fully discussed in our adjudications. It is well settled that the form of the writing required by the statute is not material. The contract may be evidenced by one writing or more. It may be shown entirely by written correspondence. Whatever form the agreement may assume, if the writing or writings, viewed as a whole, constitute, in essence or substance upon their face, a note or memorandum in writing, subscribed by the party sought to be charged, or his agent lawfully authorized in writing, showing who the contracting parties are, the subject-matter of the sale, and the consideration, the statute is satisfied. Jenkins v. Harrison, 66 Ala., 357; Carter v. Shorter, 57 Ala., 253; Knox v. King, 36 Ala., 369. In cases of single instruments their sufficiency is generally of easy determination. Greater difficulties arise when, in cases like the present, the required evidence of the contract is sought to be produced by the adjustment and adaptation to each other of several letters and writings containing the negotiations of the parties, and the supposed culmination of these negotiations in a binding agreement of sale. In cases of this character it is certainly not essential that the party charged should have subscribed each paper forming a link in the chain of evidence. If the several writings upon their faces, viewed in the light of the situation and circumstances of the parties at the time they were written, clearly relate to, and connect themselves with, each other, and when their contents are adjusted, and adapted to each other, according to their reasonable and practical import, involving in form and order the manifest sense and meaning of the parties, there appears to have been clearly made known the names of the contracting parties, the subject-matter of the sale, and the consideration, and if it appears that all this has received the sanction of the subscription of the party sought to be charged, or some person by him thereunto lawfully authorized in writing, the statute requirement in reference to subscription, as well as all other particulars, is met. We said the several writings must, upon their faces, clearly relate to and connect themselves with, each other. The rule, however, does not necessarily require express mention in one document of another, or in each of all the others; and

this statement, we conceive does not modify the rule, when properly interpreted as it is stated in Knox v. King, 36 Ala., 367, viz.: 'When the memorandum in writing is itself incomplete, it cannot derive aid from another writing unless the memorandum refer to the other writing;' and that 'oral evidence cannot be received to connect the two or to supply the wanting link.' This last rule is subject to the exception which obtains generally in the construction of written contracts,—that the situation and circumstances of the parties may be looked to, when necessary, to aid in arriving at the meaning of what they have written. An explanation of these rules will be found in Jenkins v. Harrison, supra. We are of opinion that when all the writings adduced, viewed together, in the light of the situation and circumstances of the parties at the time they were written show unmistakably that they relate to the same matter and constitute several parts of one connected transaction, so that the mind can come to no other reasonable conclusion from the evidence so afforded, than that they were each written with reference to those concurrent or preceding, then there is such a reference of the one to the other as satisfies the rule, although reference in express terms does not appear. The rule is one founded in reason; and when, as practical men we look at the writings, and see, inhering in them, evidence which entirely satisfies the mind that they all relate to one general transaction, there is no reason why they should not be so considered. There is in such case a direct reference of the one to the other, within the meaning of the law. The application of the principle to the facts of this case will illustrate our meaning. The case of Beckwith v. Talbot, 95 U. S., 289, 24 L. Ed., 496, aptly illustrates it.''

Jenkins v. Harrison and White v. Breen, supra, were cited and approved in Strouse v. Elting, 110 Ala., 132, 140, 20 Sou., 123.

The holding of the New York Supreme Court, Appellate Term, in the case of Field v. Keiser, 77 Misc., 105, 135 N. Y. Supp., 1094 (cited by appellants in support of their third and fourth assignments of error), is well stated in the headnote to that case, as follows: Where in an action on a sale contract consisting of two separate writings, it is sought to take the contract out of the statute of frauds by imputing one memorandum by reference into the other, evidence of the identity of the memorandum referred to may be supplied by parol evidence clearly identifying it.

Appellants also cite the case of Leesley Bros. v. A. Rebori Fruit Co., 162 Mo. App., 195, 144 S. W., 138, and in the opinion in that case we find the following statement of principles directly applicable to the present controversy, viz.:

''If, in this case, we are to be confined to the two telegrams, it is evident that the contention of the respondent would be unassailable. The two telegrams considered by themselves, are, in their face,

so indefinite and uncertain that we could not determine what onion sets were referred to, or what draft was alluded to. But the court is allowed to interpret the memoranda (the two telegrams in this case) in the light of all the circumstances under which the same were made; and if, when the court is put into possession of all the knowledge which the parties to the transaction had at the time, it can be seen from the memoranda who the parties to the contract were, what the subject of the contract was, and what were its terms, then the court should not hesitate to hold the memoranda sufficient. Brewer v. Horst-Lachmund Co., 127 Cal., 643, 60 Pac., 418, 50 L. R. A., 240.

"The statute of frauds, however, does not require that the whole bargain or agreement between the parties should be contained in one writing; but where there are several writings, telegrams, or letters, referring to and forming a part of the same subject-matter of the contract, all of them may be consulted and considered, and construed together in ascertaining the terms of the contract. If the several writings, letters, or telegrams are signed by the parties themselves, they need not specifically refer to each other, if, by inspection and comparison of the writings themselves, their connection with the subject-matter is made sufficiently to appear. Peycke Bros. v. Ahrens, 98 Mo. App., loc. cit., 459, 72 S. W., 151."

The unanimous opinion of the California Supreme Court (en banc) in the case of Searles v. Gonzales, 28 A. L. R., 78, decided July 5, 1923, contains, we believe, a clear and sound exposition of the modern rules and principles applicable to the precise question made by the third and fourth assignments of error. In that opinion (at pages 81-82) it is said:

"A memorandum or promise, binding under the statute of frauds, may be gathered from several writings between the parties with reference to the subject-matter, and so connected with each other that they may fairly be said to constitute one paper relating to the contract. Concannon v. Smith, supra; Ryan v. United States, 136 U. S., 68, 34 L. Ed., 447, 10 Sup. Ct. Rep., 913; Elbert v. Los Angeles Gas Co., 97 Cal., 244, 32 Pac., 9; Brewer v. Horst & L. Co., 127 Cal., 643, 50 L. R. A., 240, 60 Pac., 418. While the memorandum must express the essential elements of the contract with reasonable certainty, these may be gathered either from the terms of the memorandum itself or from some other paper or papers therein referred to. If one of a series of papers which appear to have some relation to the same matter is signed by the party to be charged, this is enough, as all the papers are to be considered together as forming one contract or memorandum. There is no doubt, also, that parol evidence is admissible to identify any paper referred to. Freeland v. Ritz, 154 Mass., 257, 259, 12 L. R. A., 561, 26 Am. St. Rep., 244, 28 N. E., 226.

Any rule to the contrary is not now conceded to be absolute. There may be instances in which it would be a violation of reason and common sense to ignore a reference which derives its significance from parol proof. Beckwith v. Talbot, 95 U. S., 289, 292, 24 L. Ed., 496, 498. In such cases parol evidence of contemporaneous facts and of the circumstances in which the parties were when the writings were signed will be received to show their connection. What constitutes a 'reference' in such cases?

" 'The old rule, by which no other paper could be used to help out the memorandum unless incorporated into it by reference in the memorandum itself, . . . is no longer followed. The connection between different papers, so that they may be considered together and their sufficiency be determined by the contents of all of them, may be proved by oral evidence; at least, so far as it is the result of that evidence to establish the fact that all of the different papers which are so to be considered together were brought to the attention of both parties, and were linked together in their minds, so that the parties themselves may be found to have adopted all the papers as the expression of their purpose. This is the effect of the recent cases.' Nickerson v. Weld, 204 Mass., 346, 90 N. E., 589.

"The relation of one paper to another must appear upon the face of the writings relied upon, but it may appear in either of two ways. It may appear by express reference or from the nature of the contents. Swallow v. Strong, 83 Minn., 87, 92, 85 N. W., 942. One writing may be connected with another either expressly or by internal evidence of subject-matter and occasion. Marks v. Cowdin, 226 N. Y., 138, 145, 123 N. E., 139. It matters not what may have been the immediate purpose for which some writings may have been prepared, or that one of them may be unsigned. All that the statute requires is written evidence from which the whole contract may be made out. St. Louis, I. M. & S. R. Co. v. Beidler, 45 Ark., 17, 28.

" 'It has been held that if all the writings adduced to establish the contract, when viewed together in the light of the conditions and circumstances of the parties at the time they were written, show unmistakably that they relate to the same matter and constitute the several parts of one connected transaction, so that there can be no other reasonable conclusion, from the evidence thus afforded, than that they were written with reference to those concurrent or preceding, there is such a reference of one to the other as satisfies the rule, although there is no reference in express terms; and parol evidence is admissible to show the circumstances under which the transaction occurred, and to connect the several papers constituting the contract between the parties. Strouse v. Elting, 110 Ala., 132, 20 So., 123. See also Jenkins v. Harrison, 66 Ala., 345; White v. Breen, 106 Ala., 159, 32 L. R. A., 127, 19 So., 59,' 2 Ann. Cas., 294.

" 'The rule is one founded in reason; and when, as practical men, we look at the writings and see, inhering in them, evidence which entirely satisfies the mind that they all relate to one general transaction, there is no reason why they should not be so considered. There is in such cases a direct reference of the one to the other within the meaning of the law.' White v. Breen, 106 Ala., 159, 32 L. R. A., 127, 19 So., 59.''

The Tennessee cases of Blair v. Snodgrass, 1 Sneed, 1, 26 and Huffine v. McCampbell, 149 Tenn., 47, 76, 257 S. W., 80, are not necessarily in conflict with the opinions from which we have quoted and which support the Chancellor's decree insofar as it is challenged by the appellants' third and fourth assignments of error.

In Blair v. Snodgrass, supra, the court stated the general rules that ''when several papers are relied upon for written evidence of a sale of land, these papers must afford intrinsic proof that they relate to the same contract of sale,'' and ''parol evidence is inadmissible to connect them, or to show that they relate to the same transaction.'' In that case there were two writings signed by the party whose estate it was sought to charge thereby, but it was alleged in the bill that the two writings related to separate and distinct sales of different tracts of land, and the papers themselves indicated nothing to the contrary. In this situation, the court held that the two writings could not be construed together as evidence of the same contract for the sale of land, and that, taken separately, each of them was void for vagueness and uncertainty with respect to the nature and terms of the agreement and, in one of them at least, with respect to the description of the land.

In Huffine v. McCampbell, supra, the court said ''it is well settled in this State (as it seems to be every where) that two or more writings of the party to be charged, affording intrinsic proof of their connection, may serve as a sufficient memorandum; and even letters passing between the vendor and his agent, which refer to and connect with each other, and contain all the terms of the sale and a sufficient description of the property, may constitute a good memorandum.'' In the latter case the question was whether a deposition, voluntarily given by the party who (though her agent) had previously signed a memorandum agreeing to sell land, might be used as evidence to supply deficiencies in the original memorandum. In her deposition the witness identified the previous memorandum, and that the deposition afforded ''intrinsic proof'' of its connection with the previous memorandum was not controverted.

''The generality of the language used in an opinion is always to be restricted to the case before the court, and it is only authority to that extent. The reasoning, illustrations, or references contained in the opinion of a court are not authority, not precedent, but only

the points in judgment arising in the ·particular case before the court.'' L. & N. R. Co. v. County Court, etc., 1 Sneed, 637, 695; Clark v. Lary, 3 Sneed, 77, 80; Henley.v. State, 98 Tenn., 665, 737, 41 S. W., 352, 1104.

''It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision.'' Cohens v. Virginia, 6 Wheat. (U. S.), 399, 5 L. Ed., 257.

On the record in the case before us, the relation and connection to and with each other of the several writings signed by Mrs. Craighead, upon which complainants rely for evidence to take the case out of the statute of frauds, is so obvious that we think the observations of the United States Supreme Court in the leading case of Beckwith v. Talbot (95 U. S., 289, 24 L. Ed., 496, 498) are pertinent here. The court, inter alia, there said:

''It is undoubtedly a general rule that collateral papers, adduced to supply the defect of signature of a written agreement under the statute of frauds, should on their face sufficiently demonstrate their reference to such agreement without the aid of parol proof. But the rule is not absolute. Johnson v. Dodgson, 2 Mees. & W., 653; Salmon Falls Co. v. Goddard, 14 How., 446. There may be cases in which it would be a violation of reason and common sense to ignore a reference which derives its significance from such proof. If there is ground for any doubt in the matter, the general rule should be enforced. But where there is no ground for doubt, its enforcement would aid, instead of discouraging, fraud.''

The appellants' third and fourth assignments of error are overruled.

We also agree with the learned Chancellor in his finding that the contract of June 7, 1898, was not abandoned, abrogated and annulled by mutual consent and agreement of Mrs. Craighead and Mrs. Williams (then Miss Ida Flynn) during the four-year period mentioned in the letter of that date, or thereafter. In fact, it would be difficult to reconcile a contrary conclusion with the meaning which we have heretofore (in this opinion) attributed to Mrs. Craighead's letters of August, 1918 and August 23, 1921.

But we have treated the first and second assignments of error as opening the record for the consideration of all the evidence bearing upon the alleged abandonment, abrogation and annulment of the contract of June 7, 1898, remembering, however, that the burden was on the defendants below to sustain this defense by the preponderance of the evidence.

It should be remembered that, in her letter of June 7, 1898, Mrs. Craighead did not make the continued presence of Miss Flynn in her home for an unbroken period of "three or four years" a condition of the contract, but, to the contrary, she said: "I do not mean that you have to spend every day and hour with us. You will be free to go and come as you wish—just so you take care of us as you would your own."

We find no evidence in the record that Mrs. Craighead at any time regarded the absence of Miss Flynn from Mrs. Craighead's home as a breach of the contract, or that Mrs. Craighead at any time elected to treat the contract as breached on account of such absences. The expressions, acts and conduct of Mrs. Craighead, as late as August 23, 1921, were consistent with the recognition by her of the continued existence of the contract of June 7, 1898, and bear no evidence of the renunciation or repudiation of said contract by her.

The "promise" of Mrs. Craighead in the letter of August, 1918, "to deed to Ida Flynn Williams, on or before January 1, 1919, the little Cigar Store on the south side of the Public Square near College st., Nashville, Tenn.," was accompanied by an explanation in these words: "I already have left this piece of property to Ida Flynn in my will, and am hereby giving it to her so that she may have it safe, before I die." This was not a new contract intended by the parties to supersede the former contract of June 7, 1898, but was intended by Mrs. Craighead (according to her own statement last above quoted) merely to speed the accomplishment of the purposes of the former contract.

"Where a new contract is consistent with the continuance of the former one and only provides a new mode of discharging the same, it has no effect as a rescission unless or until it is performed." 13 Corpus Juris, p. 604, sec. 628; Daniels v. Robinson, 26 Vt., 316, 62 Am. D., 574, 585. And "a writing which is merely a confirmation or ratification of a former one will not discharge the former. A discharge will not result from a new contract, where the contrary intention of the parties is apparent." 13 Corpus Juris, p. 589, sec. 595.

It would extend this opinion to an unreasonable length to relate and review herein the evidence touching the issue made by the first and second assignments of error, and we shall refrain from doing so.

It results from the views herein expressed that all of the appellant's assignments of error are overruled and the decree of the chancery court is affirmed. A decree will therefore be entered granting a recovery to complainant Mrs. Ida Flynn Williams and against defendant W. A. Buntin, in his capacity as administrator of the estate of Mrs. Rachel Craighead, deceased, and against the surety on his appeal bond, for the sum of $25,800, with interest thereon from January 5, 1925 (the date of the filing of the bill in this cause), and

for all the costs of the cause, including the costs of the appeal, but the judgment against the surety on the appeal bond will be limited to the penalty of the bond, towit: $28,750.

Crownover and DeWitt, JJ., concur.