# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 2, 2014 Session

## STATE EX REL. COMMISSIONER, DEPARTMENT OF TRANSPORTATION v. ILYA DYSKIN ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 11C748     Jacqueline S. Bolton, Judge**

_____

**No. E2013-02286-COA-R3-CV-FILED-JANUARY 29, 2015**

_____

The question presented on this appeal is whether a covenant, *i.e.*, a promise, by a grantor to pay – in a deed conveying an undivided one-third interest in a piece of property – all property taxes and other expenses associated with the 100% interest in the property is binding on successor grantees of her remaining two-thirds interest. Sonja Taylor conveyed an undivided one-third interest in the property to Fred T. Hanzelik. Taylor agreed to pay "all taxes, expenses and obligations regarding" the property, including those on Hanzelik's portion. Taylor later conveyed her remaining two-thirds interest to Shane Coughlin, who later conveyed it to Fifth Project, LLC, which later conveyed it to defendants Ilya Dyskin and Tatiana Dyskin. Hanzelik argues that Taylor's covenant to pay property taxes for the entire ownership interest, including Hanzelik's one-third interest, is binding on the Dyskins. The trial court agreed and ordered the Dyskins to pay the entire property tax bill. After examining the deeds in the chain of title, we find no evidence of an intention that Taylor's covenant would run with the land and bind successor grantees of the two-thirds interest. Accordingly, we reverse the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Kyle Weems, John P. Konvalinka, and Mark W. Litchford, Chattanooga, Tennessee, for the appellants, Ilya Dyskin and Tatiana Dyskin.

Fred T. Hanzelik, Chattanooga, Tennessee, appellee, pro se.[1]

## OPINION

### I.

The real property at issue is a 9.843 acres parcel located along Shallowford Road in Hamilton County. On June 9, 1995, Taylor executed a quitclaim deed to Hanzelik that provides, in pertinent part, as follows:

> I, SONJA TAYLOR, . . . do hereby sell, transfer, convey and quitclaim unto FRED T. HANZELIK, an undivided one-third (1/3) interest in the following described real estate . . .
>
> \* \* \*
>
> *The grantor shall be responsible for all taxes, expenses and obligations regarding the property.* The rents shall be divided equally until the property is sold.

(Emphasis added.)

On July 15, 2005, Taylor executed a quitclaim deed conveying all of her remaining undivided two-thirds interest in the property to Shane Coughlin. This deed provides, in pertinent part, as follows:

> For prior title see Quitclaim Deed from Sonja Taylor as to an undivided one third (1/3) Interest to Fred T. Hanzelik, dated June 9th 1995, filed for record August 20, 1996 in Book 4732, page 414, in the Register's Office of Hamilton County, Tennessee.
>
> \* \* \*
>
> Taxes for the year 2005 will be assumed by and [*sic*] Grantees

---

[1]On October 24, 2014, after this appeal had been fully briefed and orally argued, attorney and pro se party Fred T. Hanzelik died. This Court entered an order on November 17, 2014, directing that a proper party be appointed in his stead pursuant to Tenn. R. App. P. 19(a). That was later accomplished. For ease of reference, we will refer to the estate as "Hanzelik."

herein.

On January 18, 2008, Coughlin sold his interest to Fifth Project, LLC, executing a warranty deed that states in pertinent part:

> **Shane Coughin, married, (an undivided 2/3 interest),** hereinafter referred to as Grantor(s), hereby sell(s), assign(s), transfer(s) and convey(s) unto **Fifth Project, LLC, a Tennessee Limited Liability Company**, hereinafter referred to as Grantee(s), the following described real estate . . .
>
> \*   \*   \*
>
> TAXES for the year 2008 are to be prorated between the grantor(s) and grantee(s) of even date herewith.

(Bold font in original.)

On December 30, 2010, Fifth Project, LLC, conveyed all of its interest in the property to the Dyskins via a quitclaim deed. The deed provides that "[a]ll taxes are to be assumed by the grantee(s)."

On June 13, 2011, the State of Tennessee filed a petition for condemnation against the Dyskins and Hanzelik, in conjunction with the State's effort to take a portion of the property, by eminent domain, for construction of a road project along Shallowford Road. The landowners and the State reached a settlement as to the amount of compensation to be paid. On May 23, 2013, the Dyskins filed a "motion for determination of correct allocation of taxes among adverse claimants" that states as follows in pertinent part:

> [The Dyskins] hereby move[] the Court in accordance with T.C.A. § 29-17-908[2] to allocate the responsibility to pay the unpaid real property tax two-thirds (2/3) to Defendants Dyskin and one-third (1/3) to Defendant [Hanzelik].
>
> A settlement on the amount of compensation to be paid

---

[2]Tenn. Code Ann. § 29-17-908 provides that in certain eminent domain cases, "[t]he only issue or question that shall be tried upon exception shall be the amount of compensation to be paid for the property or property rights taken, but in case of adverse claimants of such compensation, the court may require the adverse claimants to interplead, so as to fully determine the rights and interests of such claimants."

Defendants Dyskin and Defendant Hanzelik has been reached with the State of Tennessee pending approval of the Governor. Defendant Hanzelik incorrectly maintains he has no responsibility to pay one-third (1/3) of the unpaid taxes.

The allocation of the real property taxes by the Court is necessary to the distribution of the agreed compensation when approval is received by the Governor.

(Footnote added.)

On June 24, 2013, the trial court entered an order providing that the Dyskins are responsible for all unpaid taxes on the 100% interest in the property, including Hanzelik's undivided one-third interest. The order provides:

The Court is construing the original Motion as that of a Summary Judgment Motion although neither of the parties has correctly complied with Rule 56 as to the filing of Summary Judgments. If either party is aggrieved of the Court's determination of the original Motion before strict compliance with Rule 56, then either party may have 30 days from the date of this Order to supplement the original Motion which the Court is deeming a Motion for Summary Judgment.

It is apparent from a review of the Successor Deeds that the Dyskins should be responsible for all taxes on said property, including the one-third interest held by Defendant, Hanzelik.

The Court determines that the language in the deeds taken as a whole, requires the Dyskins pay all the taxes.

The Dyskins timely filed a notice of appeal.

II.

The issue before us, as stated by the Dyskins in their brief, is

[whether] the trial court incorrectly ruled that the covenant to pay taxes contained in the quitclaim deed from Sonja Taylor (grantor) of an undivided one-third (1/3) interest in [her] real

-4-

property to Fred Hanzelik (grantee) was not a personal covenant by Ms. Taylor but, instead, was a covenant that ran with the land that became an obligation of the successors, heirs and assigns of Ms. Taylor.

The parties agree that there are no genuine issues of material fact and that the legal issue presented is suitable for summary judgment. "We review a trial court's decision on a motion for summary judgment de novo with no presumption of correctness." *Harris v. Haynes*, 445 S.W.3d 143, 146 (Tenn. 2014).

III.

Hanzelik argues that Taylor's covenant to pay "all taxes, expenses and obligations regarding the property" in her 1995 deed granting him an undivided one-third interest should be construed as one that runs with the land and therefore binds Taylor's successors, assignees, and heirs. Hanzelik further argues that the provision in the deed from Fifth Project, LLC, to the Dyskins stating that "[a]ll taxes are to be assumed by the grantee(s)" should be construed as requiring them to pay property taxes on his one-third interest in the property as well as the two-thirds interest conveyed by the Dyskins' deed. The Dyskins argue that Tennessee law holds that in order for a covenant to be binding on remote grantees, the deed must expressly provide that the covenant is binding on them, citing *Lowe v. Wilson*, 250 S.W.2d 366. 367 (Tenn. 1952), among other cases. They note that the Taylor-to-Hanzelik deed does not contain such an express provision. The Dyskins further assert that there is nothing in the language of any of the deeds involved here that supports the conclusion that Taylor, or any successor owner of the two-thirds interest, intended that the covenant would bind successors of the two-thirds interest. We agree with the Dyskins.

Almost a century ago, the Supreme Court addressed a similar question and reiterated the following rule:

> The question then arising is whether the said covenant runs with the land, or was personal to the grantees under the deed. This court has in several decisions adhered to the second resolution in Spencer's Case, 5 Co. 16, [77 Eng. Rep. 72 (Q.B. 1583)] and held that a covenant in respect to something not in esse must specifically bind the assignees of the covenantor in order for such covenant to run with the land.

*Carnegie Realty Co. v. Carolina, C. & O. Ry. Co.*, 189 S.W 371, 372 (Tenn. 1916). The High Court has reaffirmed and applied this rule several times. *Farrar v. Nashville, C. & St.*

*L. Ry.*, 36 S.W.2d 95, 98 (Tenn. 1931); *Lowe*, 250 S.W.2d at 367. This Court has done likewise. *See Essary v. Cox*, 844 S.W.2d 169, 171 (Tenn. Ct. App. 1992); *Hillis v. Powers*, 875 S.W.2d 273, 275 (Tenn. Ct. App. 1993); *Tennsco Corp. v. Attea*, No. M2001-01378-COA-R3-CV, 2002 WL 1298808 at *2 (Tenn. Ct. App. M.S., filed June 13, 2002).[3]

The issue of whether a covenant should be construed as running with the land is most often raised in the context of restrictive covenants contained in a deed. *See, e.g., Gambrell v. Nivens*, 275 S.W.3d 429, 437 (Tenn. Ct. App. 2008); *General Bancshares, Inc. v. Volunteer Bank & Trust*, 44 S.W.3d 536, 540 (Tenn. Ct. App. 2000). We have recently observed that "[t]he Restatement (Third) of Property defines a 'restrictive covenant' as 'a negative covenant that limits permissible uses of land.' " *Bernier v. Morrow*, No. M2012-01984-COA-R3-CV, 2013 WL 1804072 at *5 (Tenn. Ct. App. M.S., filed Apr. 26, 2013). It is not entirely clear that a covenant to pay "all taxes, expenses and obligations regarding the property" fits the "restrictive covenant" definition, although this Court has, in a pair of related cases, construed a covenant to pay homeowners' association dues resulting from property ownership as a "restrictive covenant." *Grand Valley Lakes Prop. Owners Ass'n v. Cary*, 897 S.W.2d 262, 269 (Tenn. Ct. App. 1994); *Grand Valley Lakes Prop. Owners Ass'n v. Burrow*, 376 S.W.3d 66, 70 (Tenn. Ct. App. 2011). Regardless of whether the covenant at issue here is properly characterized as a "restrictive covenant," we are of the opinion that the general rule still applies, for the Supreme Court phrased it this way in *Carnegie Realty, Farrar*, and *Lowe*: "a covenant in respect to something not in esse must specifically bind the assignees of the covenantor in order for such covenant to run with the land." *Lowe*, 250 S.W.2d at 367.[4] The Latin phrase "in esse" is defined as "in actual

---

[3]We have also twice observed that "[w]hile this result has been criticized, *see* Case Comment, 22 Tenn. L. Rev. 971 (1953), this court has consistently followed the rule, and the Supreme Court so far has refused to review it." *Tennsco Corp.*, 2002 WL 1298808 at *2; *see also Leach v. Larkin*, No. 919193, 1993 WL 377629 at *5 n.8 (Tenn. Ct. App. M.S., filed Sept. 24, 1993). Thus, "the rule requiring specific language in the deed remains intact." *Tennsco Corp.*, 2002 WL 1298808 at *2.

[4]A somewhat different analysis applies in cases involving a common development plan pertaining to multiple parcels of land, such as a planned subdivision, as observed in *Essary:*

> In cases involving a common development plan, . . . the courts have demonstrated a willingness to enforce restrictive covenants, in the form of equitable servitudes, under the rationale that a remote grantee's knowledge of such restrictions may be imputed from the existence of a common plan as evidenced in deeds or on the plat itself. The principle behind these cases is that, when grantees purchase land within a development in reliance on the general scheme or plan as expressed by the developer, equity requires that the grantees be able to mutually enforce the restrictions. *Ridley* [*v.*

(continued...)

existence; in being." *Black's Law Dictionary* (9th ed. 2009).

The deed from Taylor to Hanzelik contains no language stating or evincing any intent that the covenant to pay all taxes, expenses and obligations regarding the property would bind successor grantees. This being the case, we construe it as a personal covenant that does not run with the land. Regarding the quitclaim deed from Fifth Project, LLC, to the Dyskins of the undivided two-thirds interest in the property, we construe it under the following well-established principles:

> In interpreting a deed, courts are primarily concerned with ascertaining the intention of the grantor. *Griffis v. Davidson Cnty. Metro. Gov't*, 164 S.W.3d [267,] 274 [Tenn. 2005]; *Rutherford Cnty. v. Wilson*, 121 S.W.3d 591, 595 (Tenn. 2003); *Hall v. Hall*, 604 S.W.2d 851, 853 (Tenn. 1980). Courts ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances. *Griffis v. Davidson Cnty. Metro. Gov't*, 164 S.W.3d at 274; *Ottinger v. Stooksbury*, 206 S.W.3d 73, 79 (Tenn. Ct. App. 2006); *Shew v. Bawgus*, 227 S.W.3d 569, 576 (Tenn. Ct. App. 2007); *Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 586 (Tenn. Ct. App. 2005).

*Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 466 (Tenn. 2012). In *Adkins v. Bluegrass Estates, Inc.*, 360 S.W.3d 404, 411 (Tenn. Ct. App. 2011), we reviewed "the rules applicable to construction of written documents such as deeds," stating the following:

> "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). The

---

[4](...continued)
*Haiman*], 164 Tenn. at 252–53, 47 S.W.2d [750,] at 755 [1932]. Outside the context of restrictions which evidence a common development plan, however, Plaintiffs have cited no authority in this jurisdiction for the proposition that restrictive covenants may be imposed on remote grantees based upon their knowledge of the existence of a prior restriction.

844 S.W.2d at 172; *see also* **Gambrell**, 275 S.W.3d at 440. The present case does not involve a common development plan.

court's role in resolving disputes regarding the interpretation of a contract is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used.

We now apply these principles to the deed to the Dyskins. We construe the agreement in the Dyskins' deed providing that all taxes are to be assumed by the "grantee[s]" to mean that the Dyskins agreed to pay all taxes on *the property interest conveyed by the deed* – the undivided two-thirds interest in the property. There is nothing in the deed to suggest that the subject language pertains to anything beyond that which is conveyed by the deed. There is no specific agreement that the Dyskins would pay taxes on Hanzelik's one-third ownership interest. Hanzelik is responsible for paying taxes and expenses on his interest in the property.

IV.

The judgment of the trial court is reversed, and the case is remanded for entry of a judgment in accordance with this opinion. The trial court's judgment will tax court costs at that level to Hanzelik. Costs on appeal are assessed to the appellant, the substituted party appointed in Hanzelik's stead pursuant to Tenn. R. App. P. 19(a).


_____
CHARLES D. SUSANO, JR., CHIEF JUDGE

-8-